630 A.2d 713

GOVERNMENT EMPLOYEES INSURANCE
COMPANY and GEICO General Ins. Co.

v.

INSURANCE COMMISSIONER of the State of Maryland.

No. 11 Sept. Term, 1993.

Court of Appeals of Maryland.

Sept. 14, 1993.

Thomas Waxter, Jr. (Franklin T. Caudill, Semmes, Bowen and Semmes, all on brief), Baltimore, for petitioners.

Evelyn O. Cannon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Susan Cohen, Asst. Atty. Gen., all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

We granted certiorari to determine whether an insurer, under whose rate-filings the premiums of drivers who reach age sixty-five automatically increase, albeit for actuarially valid reasons, violates Maryland Code (1957, 1991 Repl.Vol.) Article 48A, section 240F of the Insurance Code. Although Article 48A, section 242 provides that all insurance rates be actuarially justified, section 240F, without reference to the justification for it, prohibits an insurer from increasing premiums for drivers sixty-five years of age and older "exclusively" because of their age. The Insurance Commissioner, construing section 240F in light of section 242, determined, and the Circuit Court for Baltimore City agreed, that the insurer violated section 240F. We shall do likewise.

## I.

 Prompted by complaints from Maryland drivers that their automobile insurance premiums were being raised when they reached their sixty-fifth birthday, the Insurance Division undertook a review of the rate filings [1] of certain insurers, including the petitioners, Government Employees Insurance Company and GEICO General Insurance Company ("GEICO" or "the insurers"). The purpose of the review was to determine if those filings complied with sections 240F and 242(c)(2), the latter of which prohibits "excessive, inadequate, or unfairly discriminatory" insurance rates.

A hearing pursuant to section 242(f) was scheduled. At that hearing, GEICO's 1988 rate filings were considered. They revealed that GEICO groups risks by various classifications, including age. The age classifications run from seventeen and under to over seventy-five, and include the categories fifty to sixty-four and sixty-five to seventy-four. The Insurance Commissioner also found that each of the latter age groups is given a specific rating classification factor, corresponding to estimated mileage categories and reflecting GEICO's loss experience for the applicable group.[2]

The actuarial justification for the rating factors was not questioned by the Insurance Commissioner; however, GEICO conceded that a rating factor must always be actuarially justified: "there must be some demonstrable correlation between the factor and the loss experience of the group of insureds showing that common factor." The filings also reflected, the Insurance Commissioner determined, that the applicable rating classification factor changes as the driver moves from one age group to another. Indeed, it increases as

---

1. "Rate filings" are a regulatory mechanism by which insurance carriers are required by legislation to publicly file their rates with the Insurance Commissioner by the date they become effective. *Ogrinz v. James,* 309 Md. 381, 386, 524 A.2d 77, 80 (1987).

2. The loss experience is calculated based on the insurer's analysis of risk indicators such as number and severity of accidents and the amount of paid claims.

the age group increases. The rating factor for age group sixty-five to seventy-four is higher than that for age group fifty to sixty-four. Because to compute the premiums for a particular driver, the initial premium amount must be multiplied by the factor corresponding to the driver's age and mileage, the Insurance Commissioner found, as GEICO also conceded, the automobile insurance premiums for a driver who turns sixty-five will increase, whatever his or her driving record.[3]

Although not challenging the Insurance Commissioner's fact-finding,[4] GEICO argued that section 240F did not prohibit rate increases based on actuarial data and that, in any event, it does not increase premiums exclusively based on age. In a Memorandum and Order, the Insurance Commissioner determined that, because its rate filings effect an increase in the premiums of drivers as they turn sixty-five, GEICO had violated section 240F. Accordingly, it was ordered, effective September 1, 1992, that use of that rate filing, as it pertained to drivers sixty-five years old and older, be discontinued; GEICO was not permitted, thereafter, to use aged-based rating factors in setting the premiums of individual drivers sixty-five years and older.

GEICO's appeal to the Circuit Court for Baltimore City was unsuccessful. After that court affirmed the Commissioner's decision, it appealed to the Court of Special Appeals and simultaneously filed, in this Court, a Petition for Writ of

---

3. Although a significant one, the age group rating factor is not the sole determinant of a driver's final premium.

4. Indeed, GEICO approaches the matter as purely one of statutory construction. GEICO's Brief at 8 and 9. We are satisfied, in any event that the Insurance Commissioner's findings are supported by substantial evidence in the record. Art. 48A, § 242B(2); *Maryland Fire Underwriters Rating Bureau et al. v. Ins. Comm'r*, 260 Md. 258, 265–66, 272 A.2d 24, 29 (1971); *Ins. Comm'r v. Nat'l Bureau of Casualty Underwriters et al.*, 248 Md. 292, 303–310, 236 A.2d 282, 288–292 (1967). *See also Johns Hopkins Hosp. v. Ins. Comm'r*, 302 Md. 411, 418–19, 488 A.2d 942, 945–46 (1985).

Certiorari. We granted the petition before the intermediate appellate court considered the matter.

## II.

Section 242 sets out the factors to be used by insurers in setting rates.[5] Enacted in 1945 as section 140A of Article 48A, *see* ch. 926, Acts of 1945, and Maryland Code (1939, 1947 Cum.Supp.), its purpose was, and remains, to "promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory." *See* Art. 48A, § 241. Section 242(c) provides, as pertinent:

(c) Making of rates.—All rates shall be made in accordance with the following principles:

(1) Due consideration shall be given to (i) past and prospective loss experience within and outside this State; (ii) conflagration and catastrophe hazards, if any; (iii) past and prospective expenses both countrywide and those specifically applicable to this State; (iv) underwriting profits; (v) contingencies; (vi) investment income from unearned premium reserve and reserve for losses; (vii) dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders; (viii) and to all other relevant factors within and outside this State.

---

**5.** Maryland Code (1957, 1991 Repl.Vol.) Article 48A, section 242(a) provides that this section is applicable to all insurers except those listed in section 242(b). That section, (1992 Cum.Supp.), exempts:

(1) Reinsurance, other than joint reinsurance to the extent stated in subsection (m) of this section;

(2) Insurance of vessels or craft, their cargoes, marine protection and indemnity, or other risks commonly insured under marine, as distinguished from inland marine, insurance policies;

(3) Insurance against loss of or damage to aircraft including their accessories and equipment, or against liability other than workers' compensation, employer's liability arising out of the ownership, maintenance, or use of aircraft;

(4) Title insurance; or

(2) Rates shall not be excessive, inadequate, or unfairly discriminatory.

\* \* \* \* \* \*

(4)(i) Risks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. The standards may measure any difference among risks that are demonstrated objectively to the Commissioner to have had a direct and substantial effect upon losses or expenses. However, no rate may be based partially or on geographic area itself, as opposed to underlying risk considerations, even though expressed in geographic terms.

\* \* \* \* \* \*

Section 240F, a part of Subtitle 15,[6] dealing with unfair trade practices, provides:

No policy or contract of motor vehicle insurance shall be cancelled or non-renewed exclusively for the reason of age of the holder of the policy or contract, nor shall any premium therefor be increased exclusively for the reason of age beyond 65 years of an insured under the policy or contract.

---

(5) The Maryland Injured Workers' Insurance Fund.

\* \* \* \* \* \* .

**6.** Other statutes in Subtitle 15 prohibit discrimination on other bases. *See, e.g.,* § 234A (unfairness or discrimination in underwriting "based in whole or part upon race, color, creed, sex or blindness ... or for any arbitrary, capricious, or unfairly discriminatory reasons."); section 223(a) addresses unfair discrimination, in the form of a differential in ratings, premium payments and dividends, "between individuals of the *same class*" who present the same risks in life, health or annuity contracts); § 226 (unfair discrimination and rebates in property, casualty and surety insurance); § 240F–1 (cancellation or non-renewal of automobile insurance policy "solely because of the physical handicap or disability"). Where the Legislature intended actuarial justification to be an exception, it said so explicitly. *See also* §§ 223(a)(2)(i), 223(a)(3), 223(b)(3)(ii), 223(b)(4); § 226(c)(2); § 234A(b); § 240F–1(b).

When proposed in 1969, what is now the first clause would have prohibited cancellation or non-renewal, an underwriting decision, of automobile insurance policies of drivers who had reached an "advanced age", a practice the Legislature deemed to be against public policy. *See* Legislative Council of Maryland, Report to the Gen. Assembly of 1969: Proposed Bills at 124 (1969). As passed, however, ch. 175, acts of 1969, the legislation contained no such reference and, in fact, applied to drivers of any age. Section 240F was amended in 1972 by adding the second clause, which involves its rating decision-making, prohibiting insurers from raising premiums exclusively based on the driver's age beyond sixty-five. Ch. 394, Acts of 1972. That section expressly does not condition the prohibition against cancellation, non-renewal, or the raising of rates on whether there is actuarial justification for it.

The factors applicable to insurance rating were a part of the fabric of Maryland law long before section 240F became law. As GEICO forcefully points out, section 242 provides that insurance rates not be unfairly discriminatory, *i.e.,* arbitrary, Art. 48A, § 242(c)(2); *see also* § 241, and that they be calculated considering past and prospective loss experience. Art. 48A, § 242(c)(1). Furthermore, section 242(c)(4) has long permitted insurers to discriminate, *albeit,* not unfairly, between groups (classifications). As we have seen, this has been the law since 1945. Section 240F was engrafted onto this statutory scheme.

 We are presented with an issue of statutory construction, the primary goal of which is determining the intent of the Legislature when it enacted the subject statute. We begin our search for legislative intent with the words of the statute to be interpreted, *Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993); *State v. Crescent Cities Jaycees Found., Inc.,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *State v. 149 Slot Machines,* 310 Md. 356, 361, 529 A.2d 817, 819 (1987); *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632 (1987), considered in light of the context in which the statute appears. *Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346, 1349 (1990);

*149 Slot Machines,* 310 Md. at 361, 529 A.2d at 819; *Kaczorowski,* 309 Md. at 515, 525 A.2d at 632; *Baltimore Gas & Elec. Co. v. Public Serv. Comm'n,* 305 Md. 145, 157, 501 A.2d 1307, 1313 (1986). Context may include related statutes, pertinent legislative history and "other material that fairly bears on the ... fundamental issue of legislative purpose or goal ..." *Kaczorowski,* 309 Md. at 515, 525 A.2d at 632–33. Where the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. *Crescent Cities Jaycees,* 330 Md. at 468, 624 A.2d at 959. When, in that scheme, two statutes, enacted at different times and not referring to each other, *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 56, 507 A.2d 172, 176 (1986); *Management Personnel Serv. v. Sandefur,* 300 Md. 332, 341, 478 A.2d 310, 314 (1984), address the same subject, they must be read together, *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9, 12 (1990), *i.e.,* interpreted with reference to one another, *Schlossberg,* 306 Md. at 61, 507 A.2d at 178; *Bridges v. Nicely,* 304 Md. 1, 10, 497 A.2d 142, 146 (1985), and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme. *Balto. Gas & Elec.,* 305 Md. at 157, 501 A.2d at 1313. Neither statute should be read, however, so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory. *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992); *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Kindley v. Governor of Md.,* 289 Md. 620, 625, 426 A.2d 908, 912 (1981); *Moberly v. Herboldsheimer,* 276 Md. 211, 217, 345 A.2d 855, 858 (1975). In attempting to harmonize them, we presume that, when the Legislature enacted the later of the two statutes, it was aware of the one earlier enacted. *Cicoria v. State,* 332 Md. 21, 43, 629 A.2d 742, 752 (1993); *Bricker,* 321 Md. at 93, 581 A.2d at 12.

■ Even though two statutes may require conflicting results with regard to their common subject, they are not thereby necessarily rendered irreconcilable. Where provisions of one of the statutes deal with the common subject

generally and those of the other do so more specifically, the statutes may be harmonized by viewing the more specific statute as an exception to the more general one. *State v. Kennedy,* 320 Md. 749, 755, 580 A.2d 193, 196 (1990); *Kee v. State Hwy. Admin.,* 313 Md. 445, 458, 545 A.2d 1312, 1319 (1988), *Prince George's County v. Fitzhugh,* 308 Md. 384, 390 n. 4, 519 A.2d 1285, 1288 n. 4 (1987); *Schlossberg,* 306 Md. at 63, 507 A.2d at 180; *Lumbermen's Mutual Casualty v. Ins. Comm'r,* 302 Md. 248, 268–69, 487 A.2d 271, 281–82 (1985). *See* Norman J. Singer, Sutherland, *Statutory Construction,* § 51.05 (4th ed. 1986) (footnotes omitted):

> Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.

### III.

GEICO contends that its rates are not excessive, inadequate or unfairly discriminatory; consequently, its rate filings comply with section 242, rather than violate section 240F. It asserts that, pursuant to section 242(c), it may properly increase the rates of insureds sixty-five and older so long as the increases are actuarially justified. It also contends that, by enacting section 240F, the Legislature only intended to protect senior citizens from arbitrary and unfounded prejudice, *Ins. Comm'r v. Allstate Ins. Co.,* 268 Md. 428, 440–41, 302 A.2d 200, 206 (1973), "not to eliminate seniors altogether from the cost-based, actuarial decision-making applied to all age groups." Petitioner's Reply Brief at 6. Urging us to give the term "exclusively" its literal meaning, *see In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313, 315 (1984), GEICO submits that this Court must conclude that GEICO bases its rates, not on age alone, but on other actuarial data. Thus, while it concedes that age is a "significant factor" in determining

rates, GEICO nevertheless asserts that age is not the exclu- . sive factor. *See* Petitioner's Brief at 10.

Section 240F is straightforward, clear and unambiguous. Because it does not provide an exception for increases that are actuarially justified, it prohibits, absolutely, an insurer from increasing premiums of drivers sixty-five and older based solely on their age. Its failure to except actuarially justified increases, moreover, is understandable. Section 242 has long prohibited rating decisions that are arbitrary; consequently, arbitrary increases in the premiums for senior citizens were prohibited long before section 240F was enacted. By interpreting section 240F to mean no more than that those premium increases not actuarially justified are prohibited, GEICO would render section 240F meaningless: its sole function would merely be to reiterate what section 242(c) already provides. *See Thomas v. Police Comm'r,* 211 Md. 357, 361, 127 A.2d 625, 627 (1956); *Welsh v. Kuntz,* 196 Md. 86, 98, 75 A.2d 343 (1950). We do not attribute such a purpose to the Legislature unless it is clearly and explicitly expressed.

To be sure, sections 242 and 240F are both concerned with the setting of insurance rates, including automobile insurance. The second clause of section 240F explicitly, directly and, in fact, solely addresses that portion of that subject that has to do with setting the rates for drivers sixty-five and older. Section 242, on the other hand, never mentions drivers sixty-five and older. Nevertheless, its general provisions pertinent to the case *sub judice, i.e.,* section 242(c)(1) and (2), permitting the insurer to increase insurance rates, if actuarially justified, and section 242(c)(4) permitting the grouping of risks, have applicability to such drivers and their rates. Implicit in those provisions is the authority for the insurer to raise the rates of drivers sixty-five and older, just as it could do with regard to all other drivers. Thus, as a general proposition, section 242 authorizes the raising of the rates of drivers sixty-five and older, if otherwise justified. Viewed in light of the very clear language of section 240F, which prohibits such increases in absolute terms, it is apparent that there is a conflict between section 242 and section 240F. Section 242 expressly permits

an insurer to raise the premiums of senior drivers by an actuarially justified amount, while section 240F equally clearly does not. The conflict is fundamental and there is nothing in either section which indicates that the Legislature intended section 242 to prevail on this point. On the contrary, section 242 being in existence already, the Legislature, in 1972, perceived a problem that section 242 did not solve and, so, enacted section 240F.

■ The conflict between sections 242 and 240F is resolvable, however, by a common sense interpretation. *Kennedy*, 320 Md. at 755–56, 580 A.2d at 195. Section 242, the more general statute, may be interpreted as applying to all age classifications except sixty-five and over, which is the subject of the second clause of section 240F. Applying this interpretation, it is clear that the only conceivable purpose of enacting the second clause of section 240F, consistent with section 242, was to restrict section 242's reach. Section 240F was intended to proscribe one type of actuarially justified discrimination which section 242 formerly permitted. Because section 240F was intended to limit the provisions of section 242, it follows that, pursuant to section 242, an insurer may increase, because of age and if actuarially justified, the rates of all of its insureds except those sixty-five and over, as to whom the prohibition of section 240F is fully applicable.[7]

■ GEICO next argues that section 240F's prohibition relates only to increases which are "exclusively" by reason of age beyond sixty-five, and the record does not support that age was exclusively the reason for the increase in this case.

---

7. GEICO also argues, based on section 242(c)(4), that such class based discrimination that is actuarially justified is permitted. That argument, too, is without merit. While section 242(c)(4) may sanction such discrimination, section 240F very pointedly does not. By its terms, section 240F expressly applies to "an insured," indicating its purpose of protecting individual policyholders aged sixty-five and older. Again, the Legislature was aware that section 242(c)(4) permitted classification of risks by groups; nevertheless, it enacted section 240F. By so doing, the Legislature clearly indicated that it intended to prohibit that practice as it relates to insureds beyond age sixty-five.

The term "exclusively" is not defined in the insurance code. In defining it, we give the word "its natural and usual meaning, . . . not a strained or subtle one, in light, however, of the goal the statute seeks to achieve." *Hopkins v. Hopkins,* 328 Md. 263, 274, 614 A.2d 96, 101 (1992). *See also Harford County v. Univ.,* 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *Kaczorowski,* 309 Md. at 513, 525 A.2d at 632. The word "exclusively" has been interpreted by this Court as meaning "only, solely, purely, wholly; to the exclusion of other things." *Wieprecht v. Gill,* 191 Md. 478, 485, 62 A.2d 253, 256 (1948), quoting Black's Law Dictionary. *See* Black's Law Dictionary 565 (6th ed. 1990). *See also Heffelfinger v. Town of Morristown,* 209 N.J.Super. 380, 507 A.2d 761, 764 (1985); *Kirby v. Columbian Inst.,* 101 N.J.Super. 205, 243 A.2d 853, 855 (1968), both of which define "exclusively" as "single, sole."

GEICO concedes that a sixty-four year old driver with the same driving history, be it good, bad or "otherwise," as a driver a year younger, will immediately, and automatically, experience an increase in premiums when he or she reaches age sixty-five, while the younger driver's premiums will remain the same. In other words, if driver X, who is sixty-three, and driver A, who is sixty-four, are both born on the same day and have the same driving record, driver A will experience a rate increase when he or she turns sixty-five, while driver X will not. Since, but for aging, neither will have done anything to warrant the increase, the only conceivable basis for A's rate increase is that A has become subject to a different rating factor. But that rating factor's applicability is, as the Insurance Commissioner found, dependent on the driver's age. Age may be but a factor, *albeit,* perhaps, a significant one, used to actuarially test rates and, so, it may not be, as GEICO argues, the exclusive basis for a group rating decision. On the other hand, the effect of the rating decision on a particular driver becomes apparent only when that driver becomes subject to the *rating* factor on the basis of which his or her rates are determined. As the Insurance Commissioner noted, upon review of GEICO's rate filings, that

effect is triggered solely by that driver's age. Consequently, age is exclusively the basis for the rate increase.[8]

GEICO's reliance on out-of-state authority for the proposition that the use of the loss experience for an age group to set premiums for that group does not violate anti-discrimination statutes is unavailing. At the outset, it must be noted that the issue here relates to the use of that data with regard to drivers over sixty-five in light of an anti-discrimination statute which specifically prohibits the raising of their rates on that basis alone. As to that, *State Dept. of Ins. v. Ins. Servs. Office*, 434 So.2d 908, 910 (Fla.Dist.Ct.App.1983), *petition for review denied*, 444 So.2d 416 (1984), and *Ins. Servs. Office v. Comm'r of Ins.*, 381 So.2d 515, 516–17, *cert. denied*, 382 So.2d 1391 (La.1979), the cases upon which GEICO relies, are particularly inapposite.

In *State Dept. of Ins.*, the issue was the validity of a rule promulgated by the State Department of Insurance. The rule was promulgated to implement, 434 So.2d at 910 n. 3, *inter alia*, a statute prohibiting an insurer from, "with respect to premiums charged for automobile insurance, unfairly discriminat[ing] solely on the basis of age, sex, marital status, or scholastic achievement." *Id.* at 911. As promulgated, the rule proscribed the use of sex, marital status, or scholastic achievement. *Id.* at 909–10 n. 1. The court held that the rule was an invalid exercise of delegated authority. It reasoned:

> In enacting this statute the legislature obviously intended to permit discrimination based on sex, marital status, and scholastic achievement so long as this discrimination is not *unfair* or based *solely* on these factors. Yet the Department, by promulgating Rule 4–403.03, imposed a total prohibition against the use of sex, marital status or scholastic

---

**8.** GEICO argues that the effect of a decision affirming the Insurance Commissioner is to require a cap on their rates for drivers over sixty-five since it will not be permitted to collect for the increased risk of individual drivers over the age of sixty-five. Whether or not that will be the effect of the decision, the proper forum for redress is the Legislature, not this Court.

achievement in the formulation of premiums or rate classifications.

*Id.* at 911.

The court, in *Ins. Servs. Office,* did hold that the use of age or sex, as classifications in the establishment of rates, was not unfair discrimination on the basis of age and sex so long as there is a sound statistical basis for the classification. The statute at issue, however, did not prohibit the raising of rates solely on the basis of sex or age, as section 240F does; [9] rather it simply provided, quite similar to section 242(c)(4), that:

Risks may be grouped by classifications for the establishment of rates and minimum premium rates may be established on the basis of any classification submitted by any insurer or group of insurers, provided such classifications are found to be reasonable. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for meaning variations in hazards or expense provisions, or both. Such standards may measure any differences among risks that can be demonstrated to have a probable effect upon losses or expenses.

381 So.2d at 519. In other words, all that case decided was that classifications on which insurance rates were to be predicated had to be reasonable and not unfairly discriminatory. *Id.*

JUDGMENT AFFIRMED, WITH COSTS.

---

9. By 1993 La. Acts, No. 205 (approved June 1, 1993) Louisiana which expressly prohibited insurers from increasing, solely on the basis of age, the automobile insurance premium of drivers aged sixty-five and older. Last year, the Louisiana Legislature enacted section 22.635.1 (West 1993 Cum.Supp.) prohibiting insurers from refusing to issue or renew, on that basis, automobile insurance policies for such drivers, and section 22.635.1K. (West 1993 Cum.Supp.), preventing their cancellation for the same reason. *See* La. Acts 1992, No. 331, § 1.