783 A.2d 667

**The WHITING–TURNER CONTRACTING COMPANY**

v.

**Joe FITZPATRICK.**

**No. 9 Sept. Term 2001.**

Court of Appeals of Maryland.

Oct. 17, 2001.

296

C. Carey Deeley, Jr., (Daniel W. China of Venable, Baetjer and Howard, LLP, on brief), Towson, MD, for petitioner.

Allen G. Windsor, (Hickey & Windsor, P.A., on brief), Edgewood, MD, for respondent.

Argued before: BELL, Chief Judge, and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, Judges.

BELL, Chief Judge.

The issue presented by this case is whether a bonus payment that is not a part of the compensation promised and agreed to be paid an employee, but that has been recommended and approved for payment, yet not delivered to the employee before the employee voluntarily terminated employment, is a wage under the Maryland Wage Payment and

Collection Act, Maryland Code (1991, 1999 Repl.Vol.) § 3–501 *et. seq.* of the Labor and Employment Article. The District Court of Maryland, sitting in Baltimore County, held that it is and, therefore, ordered Whiting–Turner Contracting Company, the petitioner, to pay the bonus to Joe Fitzpatrick, the respondent. The petitioner unsuccessfully appealed to the Circuit Court for Baltimore County, which, finding that the District Court's factual findings were not clearly erroneous, affirmed.[1] Still dissatisfied, the petitioner filed a petition for writ of certiorari in this Court, which we granted. *Whiting–Turner v. Fitzpatrick,* 363 Md. 661, 770 A.2d 169 (2001). We shall reverse the judgment of the Circuit Court.

The facts surrounding this controversy are largely undisputed. The respondent was hired by the petitioner as a full time employee in 1997. His compensation, it was agreed, would consist of a weekly salary and, after two years of employment and depending upon the profitability of the company, profit sharing. The respondent left the petitioner's employ on November 20, 1998. Earlier in that month, he met with Tim Stevens, a vice president of the petitioner and the project manager of the New Haven, Connecticut project on which the respondent was project engineer, and informed Mr. Stevens that he was considering leaving the company, in favor of a job that did not require as much travel and out of state work. Before that meeting, the respondent had learned that several people in his group had received bonus checks and, so, he asked about his bonus check. Mr. Stevens responded, "I have

---

1. The respondent sued the petitioner in the District Court of Maryland, sitting in Baltimore County, for $5000.00, as "money due him as profit sharing/bonus that was due to [him] as an employee of the [petitioner] at the time the bonus was issued," citing as authority Maryland Code (1991, 1999 Repl.Vol.) § 3–501 of the Labor and Employment Article. Although the court rejected the respondent's argument that the "bonus" was profit sharing to which he was entitled, it awarded him judgment for the amount of the bonus, $2000.00, plus an additional $3000.00, because it concluded that it had discretion, pursuant to § 3–507 of the Labor and Employment Article, to award up to three times the amount in controversy. The Circuit Court for Baltimore County reversed the latter ruling and the respondent has not challenged that decision in this Court. Consequently, that is not before us and we will not address it.

a profit sharing[2] check for you in my pocket. All you have to do is tell me you are staying." After considering the matter over the weekend, the respondent gave his notice that he was resigning. The petitioner did not give the respondent the bonus check, prompting the respondent to file this action against the petitioner.

The District Court ruled that a "bonus" is a wage under the Maryland Wage law, noting that § 3–501(c) includes "bonus" in the definition of "wage." The court reasoned that the "Court's focus should be on the question of whether a bonus was earned by the [respondent] prior to the time that he tendered his resignation." Proceeding on that premise, the court found, based on the testimony of the respondent and Mr. Stevens and the petitioner's answer to interrogatories indicating that the bonus check made payable to the respondent was drawn on November 5, 1998, that, prior to the respondent's resignation, "there was a final decision made by [the petitioner] to give [the respondent] a bonus" and "[t]hat the bonus was in fact earned." Although conceding, as the petitioner had argued, that whether to give or pay a bonus is a discretionary matter, the court nevertheless opined:

"It was discretionary, but once the decision was made that the [respondent] had earned the bonus ... which I find was made on or about October of 1998 after it [was] sent up the chain of command, following Mr. Stevens' recommendation to senior management ... I find that [the respondent] had in fact earned that bonus."

As indicated, the Circuit Court affirmed. Although the issue of the proper interpretation of § 3–501(c)[3] was raised by the petitioner in its Memorandum in Opposition to the Deci-

---

2. There is no dispute that the reference is to the bonus check.

3. The interpretation of § 3–501(c) was before this Court quite recently, *see Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 780 A.2d 303, 2001 Md. LEXIS 613 (2001), but on a wholly different issue. In that case we were concerned with determining who is an employee for purposes of the statute. *Id.* at 377–79, 780 A.2d at 309–10, 2001 Md. LEXIS 613 at *14–16.

sion of the District Court, the Circuit Court did not address it. Instead, the court reasoned:

"In the case sub judice, the trial judge based her conclusion on the testimony and evidence presented to her. Whenever conflicting opinions are presented at trial, the trial judge is faced with determining which witnesses are most credible and must then make the decision accordingly. The credibility of witnesses is primarily for the trier of facts, and a determination as to credibility will only be overruled when it is clearly erroneous.... This Court does not find the District Court's judgment that the $2,000 payment was a bonus and wages pursuant to Maryland law was clearly erroneous."

Resolution of this case requires that we construe a legislative enactment, § 3–501(c), which, in turn, involves the application of the canons of statutory construction. Both the petitioner and the respondent recognize that this is so. The principles that guide us in the pursuit of the statute's meaning and the Legislature's intention in enacting it have been stated numerous times and, therefore, are well settled.

 The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature. *Mid–Atlantic Power Supply Ass'n v. PSC*, 361 Md. 196, 204, 760 A.2d 1087, 1097 (2000); *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000); *Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 115, 753 A.2d 41, 49 (2000); *Handy v. State*, 357 Md. 685, 704, 745 A.2d 1107, 1117 (2000); *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998); *Gordon Family P'ship v. Gar on Jer*, 348 Md. 129, 137, 702 A.2d 753, 757 (1997). The pursuit of that goal begins with the words of the statute, which we give their ordinary and common meaning, *see Derry v. State*, 358 Md. 325, 335, 748 A.2d 478, 483 (2000), and, when they are clear and unambiguous, ends there, as well. *Chase*, 360 Md. at 128, 756 A.2d at 991; *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238, 251, 753 A.2d 501, 508 (2000); *Chesapeake and Potomac Tel. Co. of Md.*

*v. Dir. of Fin. for Mayor and City Council of Baltimore,* 343 Md. 567, 578, 683 A.2d 512, 517 (1996). Only if the words of the statute are ambiguous need we seek the Legislature's intent in the legislative history or other extraneous sources. *Marsheck v. Bd. of Tr. of Fire & Police Employees' Retirement Sys. of City of Baltimore,* 358 Md. 393, 403, 749 A.2d 774, 779 (2000); *Resper v. State,* 354 Md. 611, 619, 732 A.2d 863, 867 (1999). We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature chose to use or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. *Taylor v. Nationsbank,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *Mid–Atlantic Power Supply Ass'n,* 361 Md. at 203, 760 A.2d at 1090. Moreover, whenever possible, the statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. *Taylor,* 365 Md. at 181, 776 A.2d at 654; *Chesapeake Amusements, Inc. v. Riddle,* 363 Md. 16, 29, 766 A.2d 1036. 363 Md. 16, 766 A.2d 1036, 1042 (2001); *Mid–Atlantic Power Supply Ass'n,* 361 Md. at 204, 760 A.2d at 1091. And a statute is to be given a reasonable interpretation, not one that is illogical or incompatible with common sense. *State v. Brantner,* 360 Md. 314, 322, 758 A.2d 84, 88–89 (2000); *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985); *Erwin and Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 315, 498 A.2d 1188, 1194 (1985).

 When the statute to be interpreted is part of a statutory scheme, it must be interpreted in that context. *GEICO v. Ins. Comm'r,* 332 Md. 124, 131–32, 630 A.2d 713, 717–18 (1993). That means that, when interpreting any statute, the statute as a whole must be construed, interpreting each provision of the statute in the context of the entire statutory scheme. *See Roberts v. Total Health Care, Inc.,* 349 Md. 499, 523, 709 A.2d 142, 154 (1998); *County Comm'r v. Bell Atlantic,* 346 Md. 160, 178, 695 A.2d 171, 180 (1997); *Hyle v. Motor Vehicle Admin.,* 348 Md. 143, 149, 702 A.2d 760, 763 (1997); *Blondell v. Baltimore Police,* 341 Md. 680, 691, 672

A.2d 639, 645 (1996). Thus, statutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or "any portion, meaningless, surplusage, superfluous or nugatory." *GEICO*, 332 Md. at 132, 630 A.2d at 717.

■■ Section 3–505 of the Wage law requires employers, upon the termination of an employee's employment, to pay that employee, or his or her authorized representative, "all wages due for work that the employee performed before the date of termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." "Wages" is defined in § 3–501(c). That section provides:

"(c) *Wage.*—(1) 'Wage' means all compensation that is due to an employee for employment.

"(2) 'Wage' includes:

"(i) a bonus;

"(ii) a commission;

"(iii) a fringe benefit; or

"(iv) any other remuneration promised for service."

Thus, what is due an employee who terminates employment with an employer are wages for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration, other than salary, that is promised in exchange for the employee's work. Subsection (c)(1) provides the definition of "wage," while subsection (c)(2) gives examples of the compensation, other than periodic salary, that the definition encompasses. Read together, the wages which an employee is due, and which must be paid on termination of employment, consist of all compensation, and any other remuneration, that the employee was promised in exchange for his work. In other words, as the petitioner argues, to be wages, "to be included within the statute, the payment must have been promised to the employee as compensation for work performed."

The respondent relies heavily, as did the District Court, on the fact that "bonus" is included in § 3–501(c)(2) as one of the forms of remuneration constituting a wage.[4] Pointing to the definition of "bonus" in *Webster's New Collegiate Dictionary* (1977 Ed. at 126) ("something given in addition to what is usual or strictly due ... money or an equivalent given in addition to an employee's usual compensation"), the respondent argues:

> "In order for the [C]ourt to accept the Appellant's argument in this case, the [C]ourt would have to ignore the plain words of section 3–501(c) that "wages" include a 'bonus.' If the employer retains absolute discretion and control over whether an employee ultimately receives the bonus that it previously declared until they actually hand the employee the money, the language of this statute is totally devoid of any meaning. There would be no right to file suit and collect a bonus under any circumstances since the payment of a bonus would lie entirely within the discretion and control of the employer. Such an interpretation was clearly not in the contemplation of the legislature in enacting this legislation; otherwise, they would simply have omitted 'bonus' from consideration as a 'wage' and would not have specifically included 'bonus' in the definition of 'wage.'"

Like the District Court, the respondent completely ignores subsection (c)(2)(iv). That provision has a meaning that is significant to an understanding of why "bonus," and, for that matter, "commission" and "fringe benefit" were included as examples of the kind of "other remuneration" that could constitute "wages." Section 501(c)(2)(iv) serves two functions: it makes clear both that the listed forms of remuneration are simply examples, by the use of the phrase "any other remuneration," and that the "other remuneration" that may be

---

4. The respondent notes that another of the petitioner's employees left the company shortly after receiving the bonus check and that the petitioner made no effort to obtain the return of that employee's bonus check. Because we are here concerned with statutory interpretation, what the petitioner did or did not do, as a factual matter, in respect to that employee is not relevant to our resolution of this case.

included in—in order to be considered—wages must have been "promised for service."

 The respondent would read out of the statute the words "promised for service." But reading the statute as including a bonus as wages only when it has been promised as part of the compensation for employment is logical and makes good common sense. The conditions of employment are determined in advance of the employment. What, if anything beyond the basic salary, the employee will receive is a matter for discussion, consideration and agreement. If a bonus is to be made part of the wage package, it can be negotiated and included in what has been promised. Similarly, whether commissions are to be paid or what fringe benefits attach are matters for agreement in advance of the employment or to become a part of the undertaking during the employment. Once a bonus, commission or fringe benefit has been promised as a part of the compensation for service, the employee would be entitled to its enforcement as wages. Consequently, this interpretation of § 3–501(c), rather than rendering the language of the statute devoid of meaning, gives it a very definite one and creates a bright line test that is easily applied. Moreover, this reading gives effect to the plain language of the statute and, we believe, is reflective of the Legislature's intent in enacting it.

 Applying this test to the case sub judice, the parties' agreement with regard to compensation, made at the time the petitioner hired the respondent, is instructive. The terms of that agreement, which are undisputed, reveal employment relations that confirm the wisdom and accuracy of the interpretation we adopt. When the petitioner hired the respondent, the parties agreed on a salary and, after two years of employment and depending on the profitability of the company, profit sharing. Had the respondent been with the petitioner for two years when the decision was made to offer him a bonus and had the financial condition of the petitioner justified it, there would be no doubt of the respondent's entitlement, that he would have earned the distribution in this

case. That is so because sharing in the profits of the company after two years was promised as part of the respondent's compensation package. Here, however, the petitioner decided to give the respondent a bonus before he had been employed for two years. Where such remuneration is not a part of the compensation package promised, it is merely a gift, a gratuity, revocable at any time before delivery. *Snyder v. Stouffer,* 270 Md. 647, 650, 313 A.2d 497, 499 (1974); *Dulany v. Taylor,* 105 Md.App. 619, 660 A.2d 1046 (1995); *Rudo v. Karp,* 80 Md.App. 424, 429, 564 A.2d 100, (1989).

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND, SITTING IN BALTIMORE COUNTY. COSTS TO BE PAID BY THE RESPONDENT.