REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2076

September Term, 2014

_____

SHANIA MILLER

v.

DEPT. OF PUBLIC SAFETY &
CORRECTIONAL SERVICES

_____

Meredith,
Reed,
Friedman,

JJ.

_____

Opinion by Friedman, J.
_____

Filed:  June 29, 2016

This appeal raises the question of whether the Maryland Correctional Training Commission may revoke a correctional officer's certification (which the officer must have to work) after that officer has been recertified pursuant to an administrative order. We hold that, under these convoluted circumstances, the Commission may revoke the correctional officer's certification.

## PROCEDURAL AND FACTUAL BACKGROUND

Shania Miller was a correctional officer at the Maryland Reception, Diagnostic & Classification Center ("MRDCC"). As a requirement of her employment, she held a certification from the Correctional Training Commission. In 2010, Warden Solomon Hejirka of the MRDCC terminated Miller's employment after he learned that Miller was engaged in a sexual relationship with an inmate ("First Termination"). Miller appealed her termination to the Office of Administrative Hearings ("OAH")[1] ("First Appeal") and, following a hearing, an Administrative Law Judge ("ALJ") ordered that the notice of termination be rescinded. The ALJ determined that the Warden had terminated Miller's employment more than thirty days after discovering Miller's misconduct, and thus the termination came too late under the governing law. SP § 11-106(b) (stating that an appointing authority may impose disciplinary action no later than 30 days after acquiring knowledge of the misconduct). As a result, an ALJ ordered that Miller be reinstated with

---

[1] The Office of Administrative Hearings was created pursuant to § 9-1601, et seq. of the State Government ("SG") Article of the Maryland Code. The right of a correctional officer to appeal his or her termination to the Secretary of the Department, who may then refer the appeal to the OAH, is granted by § 11-110 of the State Personnel & Pensions ("SP") Article.

full back pay and benefits but did not reinstate her certification without further examination ("First ALJ Order").

Miller was reinstated to her position and was assigned to non-inmate-related tasks pending her recertification. During the recertification process, the Correctional Training Commission (the "Commission") discovered that Miller had failed to disclose a prior employment on her application. As a result of this nondisclosure, the Commission refused to recertify Miller and she was again terminated ("Second Termination").

Miller appealed her second termination ("Second Appeal"). Following a hearing, an ALJ found that Miller's Second Termination was pretextual and that the Department failed to follow the recertification process. An ALJ ordered that Miller's Second Termination be rescinded and that she be reinstated "with no further examination or condition" ("Second ALJ Order") as is specifically permitted pursuant to CS § 8-209.2(a). Miller was again reinstated to her position and was issued a new certification.

Following Miller's second reinstatement, the Commission convened a hearing to determine if Miller's certification should be revoked due to her alleged sexual relationship with an inmate. The Commission considered the investigation by the Internal Investigation Unit of the Department of Public Safety and Correctional Services and concluded that Miller was indeed involved in a sexual relationship with the inmate. Based on that conclusion, the Commission issued a decision ordering that Miller's certification be revoked and, as a result, she was again terminated ("Third Termination").

Miller appealed the revocation of her certification ("Third Appeal"). Following a hearing, an ALJ concluded that the Commission did not violate the Second ALJ Order by revoking Miller's certification after she had been reinstated ("Third ALJ Order"). "Nothing in section 8-209.[2](b)[2] of the Correctional Services Article prevents [the Commission] from revoking [Miller's] certification after it was reinstated according to the ALJ's order."

Miller filed a petition for judicial review in the Circuit Court for Baltimore City. Following an unfavorable decision in the circuit court, Miller has appealed to this Court.

## STRUCTURE OF THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES

There are two paths through which a correctional officer may lose his or her position. To understand Miller's various firings, certifications, reinstatements, and recertifications, it is necessary to understand the structure of the Department of Public Safety and Correctional Services ("the Department") and those two paths. At the top of the organizational chart for the Department is the Secretary of Public Safety and Correctional Services. CS § 2-102(a)(2). There are several units below the Secretary, each with its own distinct duties. CS §2-201. Relevant to this appeal are the two units that participate in the certification, supervision, and termination of correctional officers. Those units are (1) the

---

[2] At the time of the third ALJ decision, and when Miller filed her brief, "Revocation and reinstatement of certification" was designated as § 8-209.1 of the Correctional Services ("CS") Article. Ch. 305 § 1, of the Acts of 2015, redesignated CS § 8-209.1 as CS § 8-209.2 without any changes and enacted a new CS § 8-209.1. We will use the current designation of CS § 8-209.2 to refer to the section with the catchline "Revocation and reinstatement of certification."

Correctional Training Commission (referred to above as "the Commission"), CS §§ 2-201(7), 8-203; and (2) the Operations unit.

While the Commission comprises the entirety of its unit, the Operations unit further divides. At the top of the Operations unit is the Commissioner of Correction. CS § 3-202. Below the Commissioner of Correction is the Warden of each facility. CS § 3-211. One of the facilities included in the Operations unit is MRDCC. The powers of a Warden are limited to the specific facility that the Warden supervises. CS § 3-211 (stating that each Warden "is in direct charge of the correctional facility to which the warden … is appointed" and that the warden shall "supervise the government, discipline, and policy of the correctional facility."). If a correctional officer is accused of misconduct, the Warden, as the appointing authority for that facility, is tasked with investigating the alleged misconduct, meeting with the employee, and determining the appropriate disciplinary action. SP § 11-106(a). The Warden may take a number of disciplinary actions including a written reprimand, suspension without pay, up to termination of employment. SP § 11-104. A correctional officer's certification, which is issued by the Commission, is no longer valid upon termination by a Warden. COMAR 12.10.01.06B(2)(a). A correctional officer may appeal his or her termination to the Secretary, who then may refer the appeal to the OAH. SP §§ 11-109; 11-110. On appeal, an ALJ may uphold, rescind, or modify the termination. SP § 11-110(d)(1). The ALJ may also order recertification with or without examination. CS § 8-209.2(b).

When a correctional officer is hired, he or she must "meet[] minimum qualifications established by the Commission" and apply for certification. CS §§ 8-209; 8-209.1. Correctional officer candidates must obtain certification from the Commission within one year of appointment. CS § 8-209 (allowing probationary appointment of correctional officers for no more than one year "for the purpose of enabling the individual seeking permanent appointment to take a training course prescribed by the Commission."). The Commission also has the power to revoke a certification. CS § 8-209.2. If an ALJ rescinds or modifies a disciplinary action, at the ALJ's discretion, the ALJ may order the Commission to reinstate the correctional officer's certification with no further examination or condition. CS § 8-209.2(b).

Thus, there are two paths, or chains of command, through which a correctional officer may be terminated. The correctional officer may be directly terminated through a disciplinary action by the Warden of the institution at which he or she is employed. SP §§ 11-104; 11-106. Or, the Commission may revoke the correctional officer's certification, CS § 8-209.2(a), the result of which is that the officer may no longer perform his or her job functions and must be terminated. COMAR 12.10.01.06D(2) (stating that "An agency head may not permit a mandated employee to perform the duties of a mandated position if the mandated employee's certification has lapsed.").

With that framework in mind, we turn to the merits of this appeal.

**ANALYSIS**

Miller presents a two-part question for our review: did the ALJ err in finding that the Department complied with the Second ALJ Order to reinstate Miller's certification "with no further examination or condition?" This question requires a two-step analysis: *first*, did the Department comply with the Second ALJ Order to reinstate Miller's certification "with no further examination or condition"; *second*, did the Commission violate the Second ALJ Order by subsequently revoking Miller's certification. Miller argues that the Department circumvented the Second ALJ Order by issuing her certification and then imposing the examination and conditions, because, according to her theory, the Commission had no authority to subsequently revoke her certification. By contrast, the Department argues that it complied with the Second ALJ Order because Miller was issued her certification. The Commission's subsequent revocation of Miller's certification, argues the Department, was proper because the Commission retained its authority to investigate and had not yet considered the "derogatory information" about Miller. Thus, the Department concludes, all proper procedures were followed.

Our review of administrative decisions looks through the circuit court's decision and evaluates the decision of the agency, or, as in this case, the ALJ's decision. *People's Counsel for Baltimore Cnty v. Surina*, 400 Md. 662, 681 (2007). The reviewing court "may not substitute its judgment for the administrative agency's in matters where purely discretionary decisions are involved, particularly when the matter in dispute involves areas within that agency's particular realm of expertise, so long as the agency's determination is

- 6 -

based on "substantial evidence." *Id.* (internal citations omitted). "A conclusion … satisfies the substantial evidence test if a reasonable mind might accept as adequate the evidence supporting it." *Trinity Assembly of God of Baltimore City, Inc. v. People's Counsel for Baltimore Cnty,* 407 Md. 53, 78 (2008). When there is a conclusion of law, however, we must "determine if the administrative decision is premised upon an erroneous conclusion of law." *Maryland Aviation Admin. v. Noland*, 386 Md. 556, 573 n.3 (2005) (internal quotations and citations omitted). Thus, we must determine whether there was substantial evidence to support the ALJ's determination that the Department complied with the Second ALJ Order to reinstate Miller's certification "with no further examination or condition." We must also determine whether the ALJ erred, as a matter of law, by determining that the Commission did not violate the Second ALJ Order by subsequently revoking Miller's certification.

To analyze Miller's allegations of error, it is vital to remember the function of the Commission. The Commission is tasked with ensuring that each correctional officer is prepared for his or her duties. CS § 8-208 (describing the powers and duties of the Commission, which includes: "to certify and issue appropriate certificates to correctional officers," and "to perform any other act that is necessary or appropriate to carry out this subtitle."). The Commission ordinarily will only certify correctional officers upon satisfactory completion of the training requirements. *Id*. If, however, an ALJ rescinds or modifies a disciplinary action, the ALJ may order the Commission to reinstate a correctional officer's certification "without further examination or condition." CS § 8-

209.2(b). Regardless of whether a correctional officer holds his or her original certification, or if the correctional officer has received a reinstated certification, however, the Commission retains the ability to revoke a correctional officer's certification. CS § 8-209.2(a) (giving the Commission the power to revoke a certification in conjunction with disciplinary action).

Here, Miller's certification was reinstated as ordered. The evidence at the Third Appeal hearing was that: following the Second ALJ Order (1) Miller was reinstated to her position; (2) Miller was reissued her certification; and (3) Miller's certification was Certificate Number 182918. There was no testimony that Miller's certification was not reissued or only reissued following further examination or condition. Rather, the only testimony was that Miller was reinstated and issued her certification. We conclude, therefore, that there was substantial evidence on the record to determine that the Department complied with the Second ALJ Order to reinstate Miller without further examination or condition.

Miller's argument continues, however, that even if the Department did recertify her, the Department has no valid basis for subsequently revoking her certification. Miller bases her position on the plain language of CS § 9-209.2(a) and COMAR 12.10.01.06B(2)(b).

Correctional Services § 8-209.2(a) states:

> The Commission may revoke the certification of a correctional officer in conjunction with disciplinary action taken under Title 11 of the State Personnel and Pensions Article[, which concerns disciplinary actions, layoffs, and employment terminations in the State Personnel Management System].

CS § 8-209.2(a).

Miller reads this provision as mandating that the Commission may *only* revoke a correctional officer's certification "in conjunction with" a disciplinary action taken by the Warden. Because there was no disciplinary action taken by the Warden against her at the time of her Third Termination, Miller concludes that the Commission lacked the ability to revoke her certification.

We think Miller's argument impermissibly requires us to add the word "only" to the text of CS § 8-209.2(a). *See Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302 (2001) ("We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature chose to use…"). Rather, use of the word "may" indicates that the legislature intended to "confer a right, privilege, or power," not state "a mandatory obligation." Department of Legislative Services, MARYLAND STYLE MANUAL FOR STATUTORY LAW, 57 (July 2008). The Commission may revoke an officer's certification "in conjunction with" the Warden taking disciplinary action, as permitted by CS § 8-209.2(a), but the Commission may also act independently to revoke a certification and to fulfill its mandate to assure that all correctional officers are fit and prepared for their duties. CS § 8-208. Moreover, Miller's argument ignores the implications of the structure of the Department. As discussed above, the Commission belongs to a separate unit from the Wardens of the facilities. The Commission's process for certification and revocation of certification, although complimentary to the hiring and termination decisions made by the Wardens, is a separate process involving separate procedures. Thus, although the Correctional Services Article allows the Commission to revoke a correctional officer's

certification in conjunction with disciplinary action by the warden, this path is not exclusive and we hold that the Commission may also may revoke a correctional officer's certification on its own initiative.

Miller's next argument is that any misdeeds committed by a correctional officer *before* certification are essentially waived by the Commission upon certification. Put another way, after issuing a certification, the Commission cannot go back and use an event known or knowable before certification as a grounds for future decertification. Miller supports this idea by reference to COMAR 12.10.01.06B(2)(b), which states:

> (2) A mandated employee's certification is valid for the period determined by the Commission or *until* the employee:

> \* \* \*

> (b) Does not meet the Commission's standards.

COMAR 12.10.01.06B(2)(b) (emphasis added).

Miller reads the word "until" in COMAR 12.10.01.06B(2)(b) to dictate that anything the correctional officer did before certification, is prohibited as grounds for subsequent revocation.

In our view, Miller reads too much into the word "until." The word "until," as used in this regulation, does not temporally limit the Commission to misconduct occurring after the correctional officer is certified. Rather, we think the better reading is that the Commission may revoke a correctional officer's certification once it determines that the employee does not meet the Commission's standards, no matter when the misconduct occurred. Moreover, even if the regulation had the meaning ascribed to it by Miller, it

couldn't trump the clear statutory command of CS § 8-208, which gives the Commission the power to "perform any other act that is necessary or appropriate," CS § 8-208(15), including decertification. The Commission is empowered not only to set the standards for certification, but also to review the methods of training correctional officers and review correctional officers' certification. CS §§ 8-208; 8-209.2. If the Commission discovers that a correctional officer does not meet the established standards, the Commission has the authority to revoke that officer's certification even if the failure to meet those standards arose from conduct occurring prior to certification. CS § 8-208 (listing the Commission's powers and duties as not only "prescrib[ing] standards" but also "inspect[ing]," "revok[ing]," and making "continuous study" of standards, methods, and programs). Once Miller was reinstated to her position for the third time and reissued her certification, it was still the Commission's responsibility to ensure that Miller met the established standards and was fit to perform the duties of a correctional officer.

Additionally, Miller's argument ignores the two chains of command through which a correctional officer may be terminated. The Warden of the MRDCC originally terminated Miller's employment. Her termination came, however, beyond the thirty-day time limit and the Warden's ability to terminate Miller for her misconduct was thereafter foreclosed. The Warden's inability to terminate Miller, however, did not prevent the Commission from acting. Although Miller's Second Termination was initiated by the Commission, it was for her failure to disclose prior employment, not for the sexual misconduct. And, in any event, that Second Termination was ruled pretextual by the ALJ and reversed. The Commission

never previously had the opportunity to consider Miller's sexual relationship with the inmate and whether that rendered her unfit to serve as a correctional officer. The Commission is entitled to finish its process and determine whether Miller's sexual relationship with the inmate would adversely affect her ability to perform her duties as a correctional officer. When the Commission had the opportunity, it found her unfit to continue as a correctional officer—a proposition with which we can hardly disagree.

We conclude that there was substantial evidence to support the ALJ's determination that the Department complied with the order to reinstate Miller's certification "with no further examination or condition." We also conclude that the ALJ did not err as a matter of law in determining that the Commission did not violate the Second ALJ Order by subsequently revoking Miller's certification. We, therefore, affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**