**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1890**

_____

MARK GLAGOLA,

Plaintiff - Appellee,

v.

TRANSWESTERN DEVELOPMENT COMPANY; TDC LOGISTICS COMPANY, LLC, f/k/a Ridge Development Company, LLC,

Defendants - Appellants.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore.  J. Mark Coulson, Magistrate Judge.  (1:21-cv-01230-JMC)

_____

Submitted:  May 5, 2023                          Decided:  July 26, 2023

_____

Before GREGORY, THACKER and RICHARDSON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF**: Devin M. Misour, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellants.  N. Tucker Meneely, Susan Stobbart Shapiro, COUNCIL, BARADEL, KOSMERL & NOLAN, P.A., Annapolis, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Transwestern Development Company and TDC Logistics Company, LLC (collectively, Transwestern), appeal the magistrate judge's[*] order denying their motion for summary judgment and granting Mark Glagola (Appellee)'s summary judgment motion in this breach-of-contract action. Finding no reversible error, we affirm.

We "review[] de novo the district court's order granting summary judgment." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 565 n.1 (4th Cir. 2015). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 568 (quoting Fed. R. Civ. P. 56(a)). In determining whether a genuine dispute of material fact exists, "we 'view the facts and all justifiable inferences arising therefrom in the light most favorable to' . . . the nonmoving party." *Jacobs*, 780 F.3d at 565 n.1 (internal quotation marks omitted). However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). When a "district court's grant of summary judgment disposed of cross-motions for summary judgment, we consider each motion separately on

---

[*] The parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c).

its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (internal quotation marks omitted).

The parties agree that Maryland law applies. Under Maryland law, "the primary goal of contract interpretation is to ascertain the intent of the parties in entering the agreement and to interpret the contract in a manner consistent with that intent." *Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 310 (Md. 2019) (brackets and internal quotation marks omitted). Contracts are construed as a whole, "interpret[ing] their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Walker v. Dep't of Hum. Res.*, 842 A.2d 53, 61 (Md. 2004). When a contract's language is unambiguous, that interpretation "is based on what a reasonable person in the position of the parties would have understood the language to mean and not 'the subjective intent of the parties at the time of formation.'" *Credible Behav. Health*, 220 A.3d at 310 (quoting *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010)). When a contract is ambiguous, we may "consider extrinsic or parol evidence to ascertain the parties' intentions." *Credible Behav. Health*, 220 A.3d at 311.

"A contract is not ambiguous merely because the parties do not agree as to its meaning." *Phx. Servs. Ltd. P'ship v. Johns Hopkins Hosp.*, 892 A.2d 1185, 1223 (Md. Ct. Spec. App. 2006). Instead, "a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning," based on "a consideration of the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (internal

3

quotation marks omitted).  Whether a contract is ambiguous is a question of law.  *Credible Behav. Health*, 220 A.3d at 309.

Transwestern does not point to any ambiguity in the contract language itself. Instead, it asks us to read into the agreement an implied term requiring Appellee's continued employment to receive a profit-sharing payment.  "A contract's silence on a particular issue does not, by itself, create ambiguity as a matter of law, even though silence creates ambiguity when it involves a matter naturally within the scope of the contract." *Azat v. Farruggio*, 875 A.2d 778, 785 (Md. Ct. Spec. App. 2005).  The contract in question concerned the amount of profits Appellee would receive, not whether he would receive them all.  A contract "need not address every conceivable issue or potential outcome to avoid being ambiguous; it need only provide a clear answer for the matter in dispute." *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 235 (Md. 2013).

Here, Transwestern does not identify any ambiguous language in the agreement. And the Supreme Court of Maryland has cautioned that it is "improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships."  *Canaras v. Lift Truck Servs., Inc.*, 322 A.2d 866, 873 (Md. 1974).  Thus, we conclude that the magistrate judge correctly interpreted the contract.

Transwestern relies on *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667 (Md. 2001), to establish that its promise was nonbinding.  At issue before the *Whiting-Turner* court was whether a profit-sharing payment constituted a wage under the Maryland

4

Wage Payment Collection Act ("MWPCA"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509 (LexisNexis 2022). 783 A.2d at 669-70. The court held that it did not, explaining that "what is due an employee who terminates employment with an employer are wages for work performed before termination, or all compensation due to the employee as a result of employment including any remuneration, other than salary, that is promised in exchange for the employee's work." *Id.* at 671. The employee in that case was entitled to a bonus payment only after two years of employment and thus was not entitled to it because he left his employment before the two years; "[h]ad the [employee] been with the [employer] for two years when the decision was made to offer him a bonus and had the financial condition of the [employer] justified it, there would be no doubt of the [employee]'s entitlement" to the bonus payment. *Id.* at 673.

The magistrate judge appropriately rejected Transwestern's reliance on *Whiting-Turner*. First, Appellee did not bring a claim for payment of wages under the MWPCA. Second, even if *Whiting-Turner* were to apply outside of a claim under the MWPCA, it does not support Transwestern's decision not to pay Appellee the amounts provided by the May 29 agreement. There is no explicit continued employment condition in any of the emails Appellee and Transwestern exchanged during the negotiation of the agreement in this case.

Accordingly, we affirm the magistrate judge's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*