# IN RE: DARIUS A., PERSEPHONE A. AND GERMAINE A.

[No. 259, September Term, 1980.]

*Decided November 13, 1980.*

The cause was argued before MOYLAN, MELVIN and MASON, JJ.

*Alan M. Wright, Assistant County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney for Montgomery County,* and *Richard E. Frederick, Deputy County Attorney for Montgomery County,* on the brief, for appellant.

*Richard T. Colaresi* for appellee.

MOYLAN, J., delivered the opinion of the Court.

It is unfortunate but not uncommon to see a child involved in a tug-of-war between two competing parents. It is extremely rare, however, to see children involved in a tug-of-war between two competing courts. That, in a nutshell, is the issue before us on this appeal.

Without unnecessarily belaboring the details, Darius, Persephone and Germaine are three siblings, all of whom are still under five years of age, who were found to be Children in Need of Assistance. In January, 1978 (January, 1979, in the case of the youngest, Germaine), all three children were committed to the custody and care of the Montgomery County Department of Social Services and, by that Department, were placed in foster care. On January 24, 1980, a hearing was held in the juvenile court of Montgomery County for purposes of reviewing the status of the subject children. Following the hearing, the juvenile court judge determined that it would be in the best interests of the children to remain in foster care, to remain under the general jurisdiction of the court and to remain under the continuing commitment to the Montgomery County Department of Social Services. The parents, on the other hand, because of evidence of significant progress in resolving their problems of emotional and marital instability, were to be allowed enlarged visitation rights under a specific schedule set out in the court order. Thus far, nothing that was determined is controversial.

At the same hearing, the Department of Social Services expressed its intention to file in the circuit court a Petition for Guardianship with the Right to Consent to Adoption. The final provision of the court order of January 24, 1980, was intended to enjoin such action by the Department of Social Services:

"ORDERED that under Article 3-827 of the Courts and Judicial Proceedings, it being determined by the Court that any one to file any action to relieve the parents of their parental rights may defeat the disposition of the Court; and said filing of any

action be and hereby is PROHIBITED; And It Is Further; . . . ."

The Department of Social Services takes umbrage at this final order, arguing 1) that it violates the notion of the proper separation of powers for one coordinate branch of government (the judicial) to presume to tell another coordinate branch of the government (the executive) how to behave, and 2) that it represents an invasion of the province of the circuit court on the part of the juvenile court.

The provision under which the juvenile court asserted its authority to act is Courts and Judicial Proceedings Article, § 3-827, which provides, in pertinent part:

"Pursuant to the procedure provided in the Maryland Rules, the court may make an appropriate order directing, restraining, or otherwise controlling the conduct of a person who is properly before the court, if:

(i) The court finds that the conduct:

(a) Is or may be detrimental or harmful to a child over whom the court has jurisdiction; or

(b) Will tend to defeat the execution of an order or disposition made or to be made; . . . ."

The power of the juvenile court to utilize such orders to accomplish its appropriate mission must be viewed in the context of what is that mission and what are the limits upon it. We find guidance in § 3-802 (a), which declares that the very purpose for the establishment of the juvenile court is, *inter alia:*

"(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest; . . .

(3) To conserve and strengthen the child's family

ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(4) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(5) To provide judicial procedures for carrying out the provisions of this subtitle."

It is clear that the juvenile court can, when circumstances demand, go so far as to remove a child from the custody of its parents. It is equally clear that the express statement of purpose does not go so far as to empower the juvenile court to deal with the transcendent problem of severing all legal ties and providing for the adoption of the child by another. The responsibility for making that very distinct and more far-reaching decision is conferred by Courts and Judicial Proceedings Article, § 3-601, exclusively upon the circuit court:

"A circuit court sitting in equity has jurisdiction in an action for adoption."

Section 3-602 (a) confers jurisdiction on the circuit court sitting in equity to handle, *inter alia,* guardianship matters and Article 16, § 72 deals with the attendant procedure of petitioning for guardianship with the right to consent to adoption. Indeed, when Courts Article § 3-602 (b) spells out the unimpaired jurisdiction of the juvenile court, contrasting it with the circuit court, the subject of adoption is not a part of that catalogue.

It is furthermore clear that within the broad legislative grant of authority to the Social Services Administration under Article 88A and the appropriately promulgated rules and regulations of that Administration, COMAR 07.02.11.16, the Montgomery County Department of Social Services is empowered to petition for guardianship with the right to consent of adoption:

"When permanent separation from the child's

own family is indicated, the appropriateness of the planning is to be determined as soon as possible and steps taken to obtain guardianship with right to consent to adoption."

Nothing said or held herein is the remotest intimation on the merits of some speculative petition for guardianship with the right to consent to adoption in this case. Upon the possible filing of such petition, those merits would be explored by the circuit court sitting in equity. Our holding is simply that the juvenile court cannot defeat the power of the circuit court to entertain such a petition. The wisdom or folly of the Montgomery County Department of Social Services in possibly filing such a petition is not before us. Our holding is simply that the juvenile court cannot restrain the proper exercise by the Montgomery County Department of Social Services of its lawful authority to act.*

> *That part of the order of the juvenile court prohibiting the Department of Social Services from petitioning for guardianship is vacated; costs to be paid by Montgomery County*

---

\* When Courts and Judicial Proceedings Article § 3-832 points out that an action taken by "the District Court in Montgomery County sitting as a juvenile court, shall be treated in the same manner as if it had been made, done or entered by a circuit court," it is simply recognizing the unique status of the juvenile court in Montgomery County and granting to litigants before that court the same appellate prerogative that they would have before any other juvenile court in the State.