658 A.2d 696

**In re ROGER S.**

**No. 139, Sept. Term, 1994.**

Court of Appeals of Maryland.

May 26, 1995.

Paula T. Laboy (Roger W. Titus, argued and briefed, Venable, Baetjer and Howard, on brief) Rockville, for appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore (Vanita Taylor, Office of the Public Defender of Rockville, MD, Anna Jenefsky of Washington, DC, both on brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

We are asked in this case to determine whether the District Court of Maryland in Montgomery County, sitting as the juvenile court,[1] had the authority to commit a child to the Montgomery County Board of Education and order the public schools to provide post-secondary transitional services to the child until twenty-one years of age. We shall hold that this order exceeded the court's authority under the Juvenile Causes Act, Maryland Code (1974, 1989 Repl.Vol., 1993 Cum. Supp.) §§ 3–801 to 3–837 of the Courts and Judicial Proceedings Article ("CJ").

## I.

Appellee Roger S. suffers from a variety of medical problems, including diabetes and autism. In 1990, the Honorable Douglas H. Moore, Jr., of the District Court of Maryland, sitting as the juvenile court in Montgomery County, adjudicated Roger a child in need of assistance, based on the inadequate care he was receiving from his natural parents, and committed him to the Department of Social Services to be placed in a foster home. Roger is now eighteen years old and continues to reside with his foster family.

Roger was enrolled in Montgomery County special education programs from the first through the twelfth grade,

---

1. In Montgomery County, the District Court serves as the juvenile court. In all other Maryland jurisdictions, the circuit court has jurisdiction over juvenile cases. *See* Maryland Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.) § 3–801(i) of the Courts and Judicial Proceedings Article.

whereupon, having met all the requirements for graduation, he received his high school diploma. Roger's foster parents sought additional training for Roger to help him make the transition into the work world, but the Montgomery County Board of Education ("Board") denied this request.

This determination was affirmed on local-level administrative review on August 1, 1994, prior to the juvenile court proceedings at issue in this appeal, and then affirmed at the state level following the juvenile court proceedings. *See* 20 U.S.C. § 1415 (1988 & Supp. V 1993) (outlining the procedure for review of special education placement decisions); Maryland Code (1978, 1992 Repl.Vol., 1993 Cum.Supp.) § 8–415 of the Education Article ("ED") (same). The Montgomery County Public Schools continued to provide services to Roger throughout this administrative process, pursuant to federal law. *See* 20 U.S.C. § 1415(e)(3); 34 C.F.R. § 300.513 (1994).

After the Board's decision denying Roger further services was affirmed at the local level, the Montgomery County Department of Social Services requested an emergency hearing in juvenile court for review of Roger's case. On September 21, 1994, Judge Moore conducted a hearing concerning Roger's need for continuing services. A representative of the Board appeared at that hearing in response to a summons issued by the court.[2]

Following this hearing, the juvenile court issued an order providing in relevant part:

> ORDERED this 21st day of September, 1994, that Roger S., Respondent, be and hereby is continued under the jurisdiction of the Court and jointly committed to the Montgomery County Department of Social Services for placement in

---

2. The Board contends that it was denied due process by the fact that it received the summons less than forty-eight hours before the hearing and the court's refusal to allow the Board to inspect Roger's case file. Because we resolve this case on other grounds and therefore need not reach the due process issue, we will not detail the facts underlying this claim.

foster care and the Montgomery County Public Schools for a program of educational services; And It Is Further,

\* \* \* \* \* \*

ORDERED that the Montgomery County Public Schools shall provide full transitional services to the Respondent until he is 21 years of age to include a program of vocational training. . . .

After the court overruled the Board's motion for reconsideration of this order, the Board noted an appeal to the Court of Special Appeals. We issued a writ of certiorari on our own motion prior to consideration of the case by that court.

## II.

The Maryland General Assembly enacted the Juvenile Causes Act in 1945. 1945 Maryland Laws ch. 797, § 1 (codified as amended at CJ §§ 3–801 to 3–837). Pursuant to this statute, the juvenile court exercises exclusive original jurisdiction over delinquent children and children in need of assistance or supervision. CJ § 3–804(a). The appellees, the Montgomery County Department of Social Services and Roger S., rely on two provisions of the Juvenile Causes Act, § 3–820 and § 3–827, to sustain the order of the court below.

The first section cited by the appellees is § 3–820, which prescribes the possible dispositions in cases adjudicated under the Juvenile Causes Act. This section provides in pertinent part:

(b) The priorities in making a disposition are the public safety and a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest.

(c)(1) In making a disposition on a petition, the court may:

(i) Place the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person, upon terms the court deems appropriate;

(ii) Subject to the provisions of paragraph (2) of this subsection, commit the child to the custody or under the guardianship of the Department of Juvenile Services, a local department of social services, the Department of Health and Mental Hygiene, or a public or licensed private agency on terms that the court considers appropriate to meet the priorities set forth in subsection (b) of this section, including designation of the type of facility where the child is to be accommodated, until custody or guardianship is terminated with approval of the court or as required under § 3–825 of this subtitle; or

(iii) Order the child, parents, guardian, or custodian of the child to participate in rehabilitative services that are in the best interest of the child and the family.

(2) A child committed under paragraph (1)(ii) of this subsection may not be accommodated in a facility that has reached budgeted capacity if a bed is available in another comparable facility in the State, unless the placement to the facility that has reached budgeted capacity has been recommended by the Department of Juvenile Services.

This case requires us to interpret subsection (c)(1)(ii) of this statute.

The appellees contend that the local Board of Education is a "public agency" under the statute, and that a juvenile court therefore has the power to commit a child to the local board when that is necessary to ensure that the child will receive needed educational services. This argument is based on the statutory provision that directs the juvenile court, in making a disposition, to treat as a priority "a program of treatment, training, and rehabilitation." CJ § 3–820(b). Training, the appellees argue, includes any form of instruction.

 Our goal in interpreting a statute is always to discern the intent of the Legislature. *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468, 472 (1995). The starting point for this inquiry is the language of the statute, read in its entirety and in the context of the statutory scheme. *GEICO v. Insurance Comm'r*, 332 Md. 124, 132, 630

A.2d 713, 717 (1993); *Scott v. State,* 297 Md. 235, 245, 465 A.2d 1126, 1132 (1983). "If the words of the statute are clear and free from ambiguity, we need not look further." *Tidewater,* 337 Md. at 345, 653 A.2d at 472. The language will be given its ordinary meaning, absent indications of a contrary intent by the Legislature. *Rose v. Fox Pool Corp.,* 335 Md. 351, 376, 643 A.2d 906, 918 (1994).

█ The purposes of the relevant statute are clearly enunciated in § 3–820(b), which is set forth above and is cited by the appellees. Where a statute describes means as well as ends, however, the provisions relating to means govern the actual implementation of the program. In this case, the relevant provisions governing means do not authorize a juvenile court to order a school system to provide educational services.

The key provision, for our purposes here, is § 3–820(c)(1)(ii). The juvenile court appears to have relied on this provision in issuing the disputed order. At one point, the court stated that, with respect to its power to issue a commitment order, "the school system is in no different position than is Social Services, or Juvenile Services, or [the] Health Department." The fact that the judge mentioned the precise agencies enumerated in subsection (c)(1)(ii) strongly suggests that he had this provision in mind.

██ The juvenile court's view of the statute is too broad, however. Subsection (c)(1)(ii) authorizes the court to "commit the child *to the custody or under the guardianship* of ... a public ... agency." (Emphasis added.) Although the Board of Education is certainly a public agency, its functions do not include custody or guardianship of children. The juvenile court's order is improper to the extent that it requires the Board to assume responsibilities beyond its charter. If, on the other hand, the order did not envision custody or guardianship, then it was beyond the power of the court under subsection (c)(1)(ii), because these are the only concerns that the juvenile court is authorized to address under that provision.

The remaining provisions of the Juvenile Causes Act appear to conform to our view of subsection (c)(1)(ii). For instance, the word "commit," which is the critical verb in subsection (c)(1)(ii), is earlier defined to mean "to transfer legal custody." CJ § 3–801(h). Furthermore, where a possible custodian or guardian is specifically identified, it is invariably an agency capable of providing or arranging full-time care for the child. *See, e.g., id.* § 3–820(h)–(i) (commitment to the Department of Health and Mental Hygiene); *id.* § 3–823(a) (commitment to penal institution); *see also id.* § 3–823(c)(1) (discussing the required accommodations in facilities to which children are committed). On the other hand, where the court is authorized to issue an order for purposes other than commitment, the possible objects of such an order are usually identified. *See, e.g., id.* § 3–820(c)(1)(iii) (the court may "[o]rder the child, parents, guardian, or custodian ... to participate in rehabilitative services").

■ The appellees also rely on CJ § 3–827 to support their argument that the juvenile court's order was within its powers. This section provides:

Pursuant to the procedure provided in the Maryland Rules, the court may make an appropriate order directing, restraining, or otherwise controlling the conduct of a person who is properly before the court, if:

(1) The court finds that the conduct:

(i) Is or may be detrimental or harmful to a child over whom the court has jurisdiction; or

(ii) Will tend to defeat the execution of an order or disposition made or to be made; or

(iii) Will assist in the rehabilitation of or is necessary for the welfare of the child; and

(2) Notice of the application or motion and its grounds has been given as prescribed by the Maryland Rules.

The appellees assert, "There is no question that the Board appeared before the court in response to a validly issued summons. Accordingly, the juvenile court had authority to issue an order controlling the board's conduct when faced with

the possibility that the board would otherwise cease to provide services essential to Roger's welfare."

Assuming *arguendo* that the summons was valid, the appellees' argument is nevertheless unavailing. The court's order exceeded the power conferred upon it by § 3–827 regardless of whether or not the Board was "properly before the court."

▪ Although we are mindful that the Juvenile Causes Act is to be construed liberally to achieve its purposes, CJ § 3–802(b), we are also sensitive to the possible consequences of an expansive reading of § 3–827. *See In re Darius A.*, 47 Md.App. 232, 422 A.2d 71 (1980) (vacating order barring the Department of Social Services from a Petition for Guardianship with the Right to Consent to Adoption regarding a child in need of assistance); *Matter of Smith*, 16 Md.App. 209, 295 A.2d 238 (1972) (reversing order requiring child in need of supervision to submit to her mother's commands regarding abortion). Even a remedial statute should not be construed so broadly as to create the possibility of " 'results that are unreasonable, illogical, or inconsistent with common sense.' " *Motor Vehicle Admin. v. Gaddy*, 335 Md. 342, 347, 643 A.2d 442, 444 (1994) (citations omitted).

Rather than extend the powers of the juvenile court unreasonably, we construe the language of § 3–827 *in pari materia* with the remainder of the Juvenile Causes Act. Reading the statute in this light, we conclude that it simply supplements the court's authority with respect to those matters within the court's purview under other provisions of the Juvenile Causes Act. As we have already determined, there is no other provision authorizing the juvenile court to exercise power over the Board; it may not acquire this power through § 3–827.

▪ Finally, we find support for our holding in the existence of a separate, elaborate statutory scheme governing special education placement. *See* ED §§ 8–401 to 8–417.3. In fact, as noted above, Roger's status has been reviewed within this framework. To read the Juvenile Causes Act broadly enough to sustain the lower court's order in this case would allow the comprehensive design established in the Education

Article to be routinely circumvented through juvenile court proceedings. The interpretation we have given the statute, by contrast, comports with the general principle that a statute should not be read so as to render another statute "surplusage or meaningless." *Scott v. State,* 297 Md. 235, 248, 465 A.2d 1126, 1133 (1983); *see also* 3A N. Singer, *Sutherland Statutory Construction* § 68.07, at 121 (5th ed. 1992) ("Custody statutes are considered in pari materia to statutes with related subject matter....").

The Supreme Judicial Court of Massachusetts reached this same conclusion in the case of *Oscar F. v. County of Worcester,* 412 Mass. 38, 587 N.E.2d 208 (1992). In that case, the juvenile court ordered the county government to pay for private schooling for a child who suffered from a learning disability and was adjudicated to be "in need of services." The Supreme Judicial Court held that this order was beyond the juvenile court's power. *Id.* at 210. The court placed particular reliance on the fact that special education placement was governed by a separate statutory scheme:

> [I]mportant to our conclusion is the existence, pursuant to G.L. c. 71B (commonly called Chapter 766), of a substantial, detailed process for the determination at the local level of the special educational needs of students, for the possibility of review of any such determination by a State agency, and for judicial review of the various decisions. Section 3 of G.L. c. 71B provides in part that "[n]o child shall be placed in a special education program without prior consultation, evaluation, reevaluation, and consent as set forth and implemented by regulations promulgated by the department [of education]." In the face of the various provisions of G.L. c. 71B, we decline to read [the child in need of services statute] as authorizing a judge to bypass the detailed processes of G.L. c. 71B and then to direct that a particular educational service be provided at public expense.

*Id.* (second and third alterations in original). As stated above, we agree with this analysis.

For the foregoing reasons, we hold that the court lacked authority to commit Roger S. to the Montgomery County Public Schools. Accordingly, the juvenile court's order requiring the Board of Education to provide services to Roger S. must be vacated.

*ORDER OF THE DISTRICT COURT VACATED. APPELLEES TO PAY COSTS.*