768 A.2d 735

**In re NICHOLAS B.**

**No. 889, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 8, 2001.

Roger W. Titus (Kristin M. McCabe and Venable, Baetjer and Howard, on the brief), Rockville, for appellant.

Daniel J. O'Brien, Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General, Bruce P. Martin, Assistant Attorney General and Daniel R. Malone, Staff Attorney, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ADKINS and WILLIAM W. WENNER (Retired, specially assigned) JJ.

WENNER, Judge.

This is an appeal from a judgment of the District Court for Montgomery County, sitting as a Juvenile Court, directing

that Nicholas B., a minor, who had been adjudicated a delinquent child, be committed to the Department of Juvenile Services (DJS) for placement at the Regional Institute for Children and Adolescents–Rockville (RICA), and that appellant, the Board of Education of Montgomery County (County Board), provide Nicholas B. with educational services while residing at RICA Rockville. On appeal, appellant presents us with the following question:

> DOES A JUVENILE COURT HAVE THE AUTHORITY UNDER § 3–820 OF THE JUVENILE CAUSES ACT AND THE SEPARATION OF POWERS DOCTRINE TO ORDER THAT A COUNTY BOARD OF EDUCATION, A NONPARTY, PROVIDE EDUCATIONAL SERVICES TO A JUVENILE?

For the following reasons, we shall answer "no," vacate the judgment, and remand the case to the juvenile court for further proceedings consistent with this opinion.[1]

### Background

Nicholas B. is a thirteen year old child who has had considerable contact with the juvenile justice system. On 19 April 2000, Nicholas B. was adjudicated a delinquent child, and committed to the care and custody of the DJS for placement at RICA Rockville.[2] On 8 May 2000, the juvenile court conducted a disposition hearing. After hearing argument of counsel, Nicholas B. was ordered placed at RICA Rockville. In addition, the juvenile court said:

---

1. Although the matter was rendered moot as Nicholas B. eloped from RICA Rockville on 10 September 2000 and the child's placement at that institution was rescinded on 12 October 2000, we shall nonetheless decide the issue presented, because it is a matter of public importance that is likely to recur. *State v. Peterson*, 315 Md. 73, 83, 553 A.2d 672 (1989) (quoting *Lloyd v. Supervisors of Elections*, 206 Md. 36, 43, 111 A.2d 379 (1954)).

2. Nicholas B. had been adjudicated a delinquent child as a result of three petitions charging him with, among others, second degree trespass and burglary.

Got it. I got the answer here. I'm not going to change his IEP. They're going to change his IEP, because, what I am going to order MCPS to do is, I'm going to order MCPS to provide education services to him, at RICA residential. If they don't want to do it with an IEP, they can send a lovely teacher over there, every day, all day, and give him eight periods of class. And, so that would mean that if they choose not to do an IEP, that they're going to give him one on one schooling at RICA residential. I'm not going to write his IEP. But, I am going to order that he be given educational services at RICA, because of all the other problems that he has had, the chance that he will be unduly badly influenced in a, in a regular county school system.

Thus, by an order of 8 May, the County Board was directed to provide Nicholas B. with educational services while residing at RICA Rockville. This appeal followed.

### Discussion

Appellant contends the juvenile court lacked authority, under either § 3–820 of the Juvenile Causes Act or the Separation of Powers Doctrine, to order the County Board to provide Nicholas B. with educational services while residing at RICA Rockville. We agree.

The purposes of the Juvenile Causes Act are described in pertinent part, in § 3–820 as follows:

(c) The priorities in making a disposition are consistent with the purposes specified in § 3–802 of this subtitle.

(d)(1) In making a disposition on a petition, the court may:

(i) Place the child on probation or under supervision in his own home or in the custody or under the guardianship of a relative or other fit person, upon terms the court deems appropriate;

(ii) Subject to the provisions of paragraph (2) of this subsection, commit the child to the custody or under the guardianship of the Department of Juvenile Justice, a local department of social services, the Department of Mental Health and Hygiene, or a public or licensed

private agency on terms that the court considers appropriate to meet the priorities set forth in § 3-802 of this subtitle, including designation of the type of facility where the child is to be accommodated, until custody or guardianship is terminated with approval by court or as required under § 3-825 of this subtitle.

 "Our goal in interpreting a statute is always to discern the intent of the Legislature." *In re Roger S.,* 338 Md. 385, 390, 658 A.2d 696 (1995)(citing *Tidewater v. Mayor of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468 (1995)). "The starting point for this inquiry is the language of the statute, read in its entirety and in the context of the statutory scheme." *Id.* (citing *GEICO v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713 (1993); *Scott v. State,* 297 Md. 235, 245, 465 A.2d 1126 (1983)). "If the words of the statute are clear and free from ambiguity, we need not look further." *Id.* (quoting *Tidewater,* 337 Md. at 345, 653 A.2d 468). "The language will be given its ordinary meaning, absent indications of a contrary intent by the Legislature." *Id.* (citing *Rose v. Fox Pool,* 335 Md. 351, 376, 643 A.2d 906 (1994)).

One of the purposes of the General Assembly in enacting the Juvenile Cause Act was to "provide for the care, protection and wholesome mental and physical development of children coming within the provisions of [the Juvenile Causes Act]; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public's interest." Md.Code Ann., Cts. & Jud. Proc. § 3-802(4). As the Court of Appeals put it in *In re Roger S.,* 338 Md. at 391, 658 A.2d 696, "the relevant provisions governing means do not authorize a juvenile court to order a school system to provide educational service." *Id.*

Moreover, in *In re Demetrius J.,* 321 Md. 468, 583 A.2d 258 (1991), in examining the separation of powers doctrine in the context of the juvenile court and the reasoning behind the amendment to § 3-820, the Court of Appeals noted that the amendment authorizes a "court to commit a delinquent child to the custody of the DJS and permits it, upon such commit-

ment to designate 'the type of facility' where the child is to be accommodated." CJ § 3–820(d)(1)(ii). But it does not go so far as to permit the court to designate the specific facility in the hope that "it would avoid constitutional considerations." *Id.* at 476, 583 A.2d 258. In other words, the purpose of the amendment was to limit the authority of a juvenile court in rendering disposition.

As we have said, *supra,* § 3–820(d)(1)(ii) permits a juvenile court to commit a child to the custody or under the guardianship of the DJS. Here, however, we believe the juvenile court lacked authority to order the County Board to provide Nicholas B. with educational services while residing at RICA Rockville.

**JUDGMENT VACATED; CASE REMANDED TO THE DISTRICT COURT FOR MONTGOMERY COUNTY, SITTING AS A JUVENILE COURT, FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**