*In re: Z.A., K.P.*, No. 949, Sept. Term 2023.  Opinion filed on March 28, 2024, by Wells, C.J.


**CONSTITUTIONAL LAW – SEPARATION OF POWERS – JUDICIAL POWERS AND FUNCTIONS – ENCROACHMENT ON EXECUTIVE – POWERS, DUTIES, AND ACTS UNDER LEGISLATIVE AUTHORITY – JUDICIAL EXERCISE OF STATUTORY AUTHORITY AS ENCROACHING ON EXECUTIVE**

Juvenile court does not usurp the discretionary functions of the executive by directing local department to provide services in connection with child in need of assistance (CINA) permanency plan pursuant to the explicit grant of authority by the legislature.


**INFANTS – DEPENDENCY, PERMANENT CUSTODY, AND TERMINATION OF RIGHTS; CHILDREN IN NEED – JUDGMENT, ORDER, AND DISPOSITION – AMENDMENT, EXTENSION, OR MODIFICATION; PERIODIC REVIEW – AUTHORITY AND DISCRETION IN GENERAL**

A juvenile court has discretion to issue orders directing a local department to provide services to a child, child's family, or child's caregiver facilitating permanency planning for child in need of assistance (CINA), where the court's order protects and advance the child's best interest. Md. Code, Courts & Judicial Proceedings Article § 3-823.


**INFANTS – DEPENDENCY, PERMANENT CUSTODY, AND TERMINATION OF RIGHTS; CHILDREN IN NEED – JUDGMENT, ORDER, AND DISPOSITION – AMENDMENT, EXTENSION, OR MODIFICATION; PERIODIC REVIEW – NEEDS, INTEREST, AND WELFARE OF CHILD IN GENERAL**

Juvenile court abused its discretion by ordering local department to pay for parent's train tickets and hotel accommodations in connection with visitation pursuant to child in need of assistance (CINA) permanency plan, where evidence in the record did not establish that a specific type of transportation or accommodation was necessary to support the best interest of the minor children.

Circuit Court for Montgomery County
Case Nos. 06-I-19-000106 & 06-I-19-000109

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 949

September Term, 2023

_____

IN RE: Z.A., K.P.

_____

Wells, C.J.,
Graeff,
McDonald, Robert N.,
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wells, C.J.

_____

Filed: March 28, 2024

*Tang, Rosalyn, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal consolidates two child in need of assistance ("CINA") cases, involving minor children Z.A. and K.P. The minor children have a common mother ("Mother") and different fathers; K.P.'s father is deceased and Z.A.'s father has not participated in the minor child's CINA matter. Since February 2020, the minor children have lived in North Carolina in the care of J.B., a cousin of Z.A.'s father, and her husband, D.B. This appeal concerns an order facilitating Mother's in-person visitation with the minor children pursuant to the juvenile court's permanency plan of reunification with Mother.

On February 22, 2023 (the "February 22 order"), the Circuit Court for Montgomery County, sitting as a juvenile court, directed the Montgomery County Department of Health and Human Services ("the Department") to provide Mother with monthly in-person visitation. At a permanency planning review hearing held on June 9, 2023, the juvenile court ordered the Department to pay for Amtrak train tickets and hotel accommodations for Mother's monthly in-person visitation with Z.A. and K.P. in North Carolina. The juvenile court issued a written order reiterating this order on June 13, 2023 (the "June 13 order"). The Department appealed, presenting us the following question:[1]

---

[1] In her brief, Mother phrased the question presented as follows:

> Did the court's order directing the department to pay for Ms. B's transportation costs related to visitation constitute a proper order within the court's authority?

K.P. phrased the question as follows:

> Did the juvenile court properly exercise its statutory duty to ensure that the Department made reasonable efforts to reunify K.P. and his mother when it ordered the Department to pay for K.P.'s mother travel to visit him and his

Did the juvenile court exceed its authority and err as a matter of law by ordering the Department to make specific expenditures in order to facilitate Mother's visits in North Carolina?

Mother and K.P. filed briefs in opposition.[2]

For the reasons discussed below, we answer the Department's question partly in the negative. We hold that the juvenile court had the authority to direct the Department to bear expenses in connection with the permanency plan, and that it did not abuse that discretion when it ordered the Department to pay Mother's travel expenses. However, we also hold that the juvenile court abused its discretion in specifying that the Department provide a particular type of transportation and accommodation in its order. We therefore vacate the juvenile court's order to the extent that it directed the Department to provide Amtrak tickets and hotel accommodations for Mother's in-person visitation in the State of North Carolina.

## FACTUAL AND PROCEDURAL BACKGROUND

The Department initiated both CINA cases at issue in this appeal on July 9, 2019, due to indications of neglect when Z.A. tested positive for PCP at birth on July 5. Z.A., K.P., and three of their siblings—A.A., K.A., and T.P.—were placed in the custody of the Department for placement in licensed foster care pending placement in kinship care. Mother did not contest the CINA petition and agreed to submit to substance abuse treatment and undergo a psychological evaluation. The juvenile court found all five

---

brother in North Carolina once a month, after the Department had relocated K.P. to North Carolina and then provided no in-person visits with his mother for three years until the court ordered it to do so?

[2] Z.A. filed a line joining "K.A.'s" brief (presumably, K.P.'s) on December 22, 2023, and did not participate in oral arguments.

2

children to be CINAs on July 23, 2019, and, following the completion of a home study, Z.A. and K.P. were placed with J.B. and D.B. in Creedmoor, North Carolina.

In June 2022, at which point the children had been placed in foster care for thirty-five months, the juvenile court changed the children's permanency plans from reunification to adoption. The orders changing the permanency plans came before us in a consolidated matter captioned *In re Z.A., A.A., K.A., K.P., T.P.*, No. 715, 715, 716, 717, 718, 719, Sept. Term, 2022. In an unreported opinion, we affirmed the juvenile court's orders. 2022 WL 17247604 (Md. Ct. Spec. App. Nov. 28, 2022). The Department subsequently initiated guardianship proceedings for Z.A., K.A., K.P., and K.A., seeking to end Mother's parental rights.

Mother submitted to a second psychological and cognitive evaluation in January 2023, which showed "no indications that [Mother] suffers from a psychiatric disorder or cognitive disability that would impair her ability to parent her children." The examiner recommended that Mother continue to participate in mental health and substance abuse treatment programs and case management support. Mother's therapists reported in February that she had made "steady progress" in her mental health treatment.

In February 2023, the Department withdrew its guardianship petition for K.P., who had refused to consent to adoption, and subsequently withdrew its guardianship petitions for the three other minor children. The juvenile court held a permanency plan hearing on February 27, 2023, and changed Z.A. and K.P's permanency plans to concurrent plans of reunification with Mother and custody and guardianship to the children's current caregivers. The juvenile court's permanency plan review hearing order entered on February

3

22 provided that "the Department shall provide [Mother] monthly in-person visits in North Carolina" with Z.A. and K.P.

The Department and Mother arranged for Mother to travel to North Carolina by train for two in-person visits with Z.A. and K.P., and to stay in a hotel room while there, at the Department's expense. At a permanency planning review hearing held on June 9, 2023, Mary Peyton, the Department's assigned social worker, testified that the parties agreed in March that the Department would pay for these two visits, and that Mother agreed that any future visitations would be at her own expense. Peyton further testified that the Department and J.B. had reached an alternative arrangement for J.B. to take the minor children to visit Mother in Maryland during the summer.

Mother's counsel told the court that Mother had not agreed to the arrangement described by Peyton. Peyton reviewed a written summary of the March meeting; she testified that it did not capture everything discussed between the parties. The juvenile court ruled that its February 22, 2023 order did not limit the Department to paying for only two visits, and that any agreement reached by the parties to that effect was inconsistent with the order. The court continued Z.A. and K.P.'s existing permanency plans and ordered weekly virtual visitation. It also ordered monthly unsupervised in-person visits in North Carolina without overnights, with the Department to pay for train tickets and a hotel room. The Department objected to the provision of the order directing it to pay for train tickets and a hotel room, citing separation-of-powers concerns. The court denied the objection and entered a written order dated June 13, 2023 reiterating that "[t]he Department shall provide Amtrak tickets and pay for the hotel room for [Mother.]" The Department timely appealed.

4

We will supply additional facts as necessary to support our analysis.

## STANDARD OF REVIEW

The Department argues that the juvenile court committed legal error and presents a question of law. When we consider questions of law, the standard of review is *de novo*. *See, e.g.*, *Clickner v. Magothy River Ass'n Inc.*, 424 Md. 253, 266 (2012) ("Questions of law . . . require our non-deferential review.").

## DISCUSSION

### I. APPEAL OF THE JUVENILE COURT'S ORDER WAS PERMISSIBLE UNDER THE COLLATERAL ORDER DOCTRINE.

As a threshold issue, on our own initiative we consider whether we may take this appeal of the circuit court's order.[3] Appeals typically may be taken only from final judgments, except where statutory authority permits interlocutory appeal. However, an interlocutory appeal is also proper where the collateral order doctrine applies. That doctrine provides that an interlocutory order is appealable where the order "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *Hudson v. Hous.*

---

[3] We note that neither party presented arguments as to whether appeal of the circuit court's order is, or is not, proper. "Ordinarily, we will consider as waived any issue not raised by an appellant in its opening brief." *Maryland Auto. Ins. Fund v. Baxter*, 186 Md. App. 147, 154 (2009) (citing *Oak Crest Village, Inc. v. Murphy*, 379 Md. 229, 241–42 (2004)). However, we perceive no harm in addressing this issue; we ultimately find that the matter is appealable, and it would not have been dispositive if the Department had not waived it. We therefore discuss appealability because we find it significant to clarify for litigants in future cases that the juvenile court's order in this matter was the proper subject of interlocutory appeal.

*Auth. of Balt. City*, 402 Md. 18, 26 (2007) (quoting *Ehrlich v. Grove*, 396 Md. 550, 563 (2007)).

This appeal is permissible under the collateral order doctrine. Considering each element of the doctrine, the circuit court's June 13 order that the Department pay for train tickets and hotel accommodations was (1) separate from the merits of determining the status of the permanency plan; (3) conclusive, if for no greater reason than that any expenditure made by the Department paid to a third party would likely be irrecuperable at the time of appeal from a final order closing the underlying CINA matter; and (4) would not be reviewable on appeal, for the same reason that it was conclusive. As for the second element, whether the order dealt with an "important" issue, the payments required by the order to Amtrak or a hotel would likely have been a relatively small portion of the Department's budget. However, the order implicates issues which are important to both the parties and other juvenile courts. These include the degree to which the Department—and, by extension, any local department—may control its budget, as well as the proper scope of the circuit court's authority in permanency planning. We, therefore, conclude that the order is appealable under the collateral order doctrine.

II. **THE LEGISLATURE HAS AUTHORIZED A JUVENILE COURT TO ISSUE ORDERS TO A LOCAL DEPARTMENT OF SOCIAL SERVICES TO ACT IN THE BEST INTERESTS OF CHILDREN IN THE DEPARTMENT'S CARE.**

**A. Parties' Contentions**

The Department argues that the separation of powers doctrine prevents a court from ordering an agency to take an action that lies within the agency's sole discretion. It points

to our case law, suggesting that it stands for the principle that juvenile courts overreach in ordering local departments to pay specific funds to specific private parties, and argues that such an order violates general principles of separation of powers under the Maryland Constitution.

The appellees respond that the authority offered by the Department pertains to a separate statutory scheme related to private placements for minor children committed to the State's care. As such, they argue, separation of powers concerns only applied in a context where the juvenile court had strayed outside of its statutory authority.

## B. Analysis

### 1. A court may order an administrative agency to expend funds where authorized by the legislature.

The Department argues that a court overreaches when it orders a local department to pay specific funds to a specific private party. The Department relies in part upon our holding in *Maryland State Department of Health & Mental Hygiene v. Prince George's County Department of Social Services*, 47 Md. App. 436 (1980) [hereinafter *Linda G.*], *cert. denied sub nom. Tom and June G. v. Dept. of Health*, 290 Md. 714, 723 (1981). In *Linda G.*, the Maryland Department of Health and Mental Hygiene ("DHMH") appealed an order of the Circuit Court for Prince George's County, sitting as a juvenile court, directing it to pay for the cost of mental health services at a privately owned hospital. *Id.* at 438. We held that the relevant statutory provision, Maryland Code Annotated, Courts & Judicial Proceedings Article ("CJP") § 3-820, "empower[ed] the court to commit a child to the custody of DHMH[, but did] not confer upon the court any right to mandate the

7

specific terms of the commitment." *Id.* at 445. We further opined that CJP § 3-820 placed significant discretion in DHMH to determine the manner in which it would provide mental health care for children committed to its custody, noting, "The indiscriminate expenditure of State funds for private placement at the instruction of courts will undermine the State budget, imperil the State's financial structure, and defeat the Legislature's intent to promote and provide mental health services with impartiality to all citizens of the State." *Id.* at 448.

The Department also cites *In re Demetrius J.*, 321 Md. 468 (1991), in which the Supreme Court of Maryland (then the Court of Appeals) reached substantially the same conclusion as we did in *Linda G.* in reviewing a juvenile court's order to place a minor child adjudicated delinquent in a private facility. Reasoning that "[t]he plain language of the statute places these matters within the sound discretion of DJS[,]" the Court held that "CJ § 3-820, considered in the light of other relevant statutes, does not authorize the court, in committing a delinquent child to the custody of the Department of Juvenile Services, to order that the child be placed in a specific private facility at the expense of the Department." *Id.* at 475, 481.

We do not read *Linda G.* or *Demetrius J.* to hold that a court can *never* direct an executive agency to render payment to a private entity, nor that that principle applies throughout the CINA statutes codified under Title 3, Subtitle 8 of the Courts & Judicial Proceedings Article ("Subtitle 8"). Both cases turned upon statutory interpretation, and concerns about judicial intrusion upon executive control over the budget arose in both cases where the court had strayed outside of its statutory authorization under CJP § 3-820. Even

8

if we took these cases to establish that juvenile courts may not "intrude upon agencies' discretion in the delivery of services" in general, as the Department suggests, that would be irrelevant if the legislature authorized the juvenile courts to direct local departments with respect to a specific matter. In short, where the executive alleges judicial intrusion, the crux of our analysis will be whether the legislature intended to authorize that intrusion.

In *Linda G.*, DHMH had broad discretion to administer its budget with respect to mental health care because the legislature intended to grant it broad discretion, not simply by virtue of its status as an executive agency. *See* 47 Md. App. at 445–48. Tellingly, the Supreme Court of Maryland recognized in *In re Adoption/Guardianship of Dustin R.*, 445 Md. 536 (2015), that the holding of *Linda G.* was later abrogated by statute. CJP § 3-820 was amended to empower courts to "permit[ ] the court to name the type of facility but generally bestow[ed] no authority on the court to specify a particular facility." *Dustin R.*, 445 Md. at 580 n.17 (quoting *Demetrius J.*, 321 Md. at 476). Thus, after the legislature clarified that it intended to authorize courts to specify private facilities with greater particularity, such orders came within the scope of judicial authority regardless of their potential impact on local departments' budgets.

In exercising the judicial power, courts frequently must order the executive branch to take certain actions. We assume that virtually all such orders require the executive to expend at least some resources. The Department has not pointed to legal authority that convinces us that there is a general, free-standing limitation upon courts that prevents them from ordering the executive to spend sums of money. *Linda G.* and *Demetrius J.* were decided with reference to a statute completely apart from the provisions at issue in this

9

matter, and there is no indication that the legislature's intent in enacting CJP § 3-820 has any bearing upon them. Rather, here, we consider whether the juvenile court acted within its authority pursuant to the relevant statutes governing permanency planning, as we do below at Section II.

> 2. *A juvenile court does not violate the separation of powers principle solely by ordering an agency of the executive branch to make a specific expenditure.*

The Department contends, in the alternative, that the juvenile court's order was violative of separation of powers principles under the Maryland Declaration of Rights. The Department is correct that courts may not intrude upon an administrative agency's sole discretion. However, it is the legislature's prerogative to determine the boundaries of that discretion.

In *Linda G.*, our holding that the juvenile court exceeded its mandate rested in part on separation of powers concerns:

> What the juvenile court order in the instant case did was to invade the Executive department by directing the Secretary of DHMH to pay out monies for a purpose not funded by the Legislature nor requested by the Executive. Furthermore, the court intruded on the Legislative Branch by directing the funding of Linda's private hospital confinement.

> Thus, the juvenile court committed a "double play," by impinging upon the powers of the Executive and the Legislative Branches. The "double play," however, is a "double error." The order directing the infringement is null and void inasmuch as the court was without the authority to enter it.

47 Md. App. at 452. The Department suggests that the June 13 order for it to pay for Amtrak tickets and a hotel room implicated similar separation of powers concerns.

To the extent that our holding in *Linda G.* rested upon separation of powers principles,[4] it does not apply here. In *Linda G.*, we held that the juvenile court intruded upon the role of the executive in the context of a case in which the court had stepped outside of its statutory grant of jurisdiction. *See* Section II.1 of this opinion. As we discuss at length below, there is no such issue here, as the juvenile court was within its statutory authority to issue its June 13 order to the Department.

The Supreme Court in *Dustin R.* more directly addressed the separation of powers concerns present in the case before us. DHMH argued that the juvenile court violated its authority to direct "administration of its programs and budget by ordering services without regard to the funds appropriated to pay for such services or [DHMH]'s regulations governing the provision of such services[.]" *Dustin R.*, 445 Md. at 578. The Court declined to consider that argument, reasoning, "Absent any argument by DHMH that the statutes at issue are unconstitutional or that the General Assembly improperly delegated authority to the juvenile court, we discern no basis on which to conclude that the juvenile court violated the separation of powers in this case, where it acted according to express statutory authority." *Id.* at 580. The Court further stated that "the issue is not whether the juvenile court improperly exercised judicial power to the detriment of the executive branch, but instead the issue is one of statutory interpretation, *i.e.*, whether the General Assembly delegated the authority to the juvenile court to act as it did in this case." *Id.* at 579. We thus

---

[4] We note, as the Supreme Court did in *Dustin R.*, 445 Md. at 580 n.17, that our discussion of separation of powers principles in *Linda G.* was *dicta*. The core of our holding in *Linda G.* was that the juvenile court acted outside its statutory authority. *See* 47 Md. App. at 441–48.

11

perceive no issue of judicial intrusion on the executive's prerogatives where the court acts within its statutory authority.[5] And, as discussed below, the juvenile court acted within its authority in this case in ordering North Carolina visitations at the Department's expense as part of the permanency plan. However, that merely establishes that the statute granted the circuit court discretion to order the Department to act where necessary to facilitate the permanency plan; we still must determine whether the court appropriately exercised that discretion. We proceed to consider whether the court acted within the scope of its statutory grant of authority in ordering the Department to pay for train tickets and a hotel room to facilitate Mother's visitation.

### III. ALTHOUGH A JUVENILE COURT HAS DISCRETION UNDER CJP § 3-823 TO ORDER THE DEPARTMENT TO UNDERTAKE ACTIONS TO BENEFIT CHILDREN IN THE DEPARTMENT'S CARE, IN THIS CASE THE COURT ABUSED ITS DISCRETION BY SPECIFYING THE MANNER IN WHICH THE DEPARTMENT HAD TO ACT.

#### A. Parties' Contentions

The Department contends that the juvenile court acted outside its statutory authority by ordering it to pay for Mother's travelling expenses, and, in support, points to its own duty—imposed by statute and regulation—to determine how services are to be provided. The appellees respond that the juvenile court is directed by statute to ensure that the Department makes reasonable efforts towards reunification of minor children and their

---

[5] The Department cites *In re Roger S.*, 338 Md. 385 (1995); *In re W.Y.*, 228 Md. App. 596 (2016); *In re Nicholas B.*, 137 Md. App. 396 (2001); and *In re Darius A.*, 47 Md. App. 232 (1980), as support for its argument that improper orders to a local department implicate separation of powers concerns. We note that each one of these cases rested upon a finding that the juvenile court acted outside of its statutory authority. We discuss *In re Shirley B.*, 419 Md. 1 (2011), cited by the Department in support of the same, below.

parents. They argue that CJP § 3-802 empowers a juvenile court to direct the local department to provide services "to the child, the child's family, or the child's caregiver," where the department is authorized by law and when necessary to advance and protect the best interests of the minor child.

## B. Analysis

We do not agree with the Department's proposition that a juvenile court categorically must leave the details of permanency planning to a local department. Rather, we hold that orders facilitating permanency planning are discretionary and, therefore, are reviewed for abuse of discretion.

We reach that conclusion by interpretation of the statutes controlling the juvenile court's authority in CINA permanency planning. Here, as in all exercises of statutory interpretation, our objective is to determine the legislature's intent. *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 344 (1995). We first consider the plain language of the statute, and its role in the broader statutory scheme; if we find that the plain text is unambiguous, our analysis ends. *See id.* at 345; *Gov't Emps. Ins. Co. & GEICO v. Ins. Com'r*, 332 Md. 124, 132 (1993) ("When, in that scheme, two statutes, enacted at different times and not referring to each other [ ] address the same subject, they must be read together, *i.e.*, interpreted with reference to one another, and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme." (cleaned up)).

CJP § 3-803(b)(1)(i) grants juvenile courts jurisdiction over "[c]ustody, visitation, support, and paternity of a child whom the court finds to be a CINA." CJP § 3-802(c)(1)

13

circumscribes the court's authority in exercising that jurisdiction, providing, "In all judicial proceedings conducted in accordance with [Subtitle 8] . . . , the court may direct the local department to provide services to a child, the child's family, or the child's caregiver to the extent that the local department is authorized under State law." The Department cites this provision and various provisions of the Code of Maryland Regulations (COMAR) as authority that it alone has discretion to determine how it shall provide services ordered by the court.[6] However, these regulations merely specify the requirements governing how a local department must develop a permanency plan for the court's review; they are altogether silent on the court's authority to review or revise that plan. They establish, if anything, that the Department must consider its own budgetary limitations, not that the juvenile court's power is restricted by those limitations. As such, we conclude nothing in COMAR limits courts from directing the specifics of a permanency plan.

Further, we conclude that there is nothing in the statutes generally delegating authority to the Department to administer its programs that purports to circumscribe juvenile courts' authority. For example, Maryland Code Annotated, Family Law Article ("FL") § 5-525, pertaining to out-of-home placement and foster care, provides the terms under which "the [Social Services Administration] shall establish a program of out-of-home placement for minor children[.]" *Id.* at (b)(1). Though it speaks to the standards the Department must meet in making reasonable efforts to reunify families, subject to court

---

[6] The Department directs our attention to COMAR 07.02.11.13(B)(11), 07.02.11.14(A), and 07.02.11.14 (B)(1).

determination, *id.* at (e)(1), FL § 5-525 is unhelpful in determining the boundaries of judicial authority in the CINA context.

The plain text of CJP § 3-823 empowers a juvenile court to determine the permanency plan and not merely to rule upon its adequacy. It is true that, as the Department notes, local departments and their staff are responsible for much of the development of permanency plans. However, the legislature has stated that final authority over the plan rests with the juvenile court. CJP § 3-823 provides that "*the court* shall . . . *[d]etermine* the child's permanency plan[.]" *Id.* at (e)(1)–(e)(1)(i) (emphasis added). Where a plan has been established, upon review, the court may "take necessary measures to protect the child" and "[c]hange the permanency plan if a change in the permanency plan would be in the child's best interest[.]" *Id.* at (h)(2)(vi)–(vii). Taken together, CJP §§ 3-802(c)(1) and 3-823 empower the circuit court not merely to request that a local department make sufficient efforts towards developing and facilitating a permanency plan, but also to direct what that plan shall be. Consequently, under CJP § 3-802 a juvenile court may issue an order directing the Department to act to facilitate the permanency plan.[7]

Neither do we conclude that the juvenile court's jurisdiction over child custody, pursuant to CJP §§ 3-803(b) and 3-823(c)(2), becomes more limited when a local department becomes involved. *See Santo v. Santo*, 448 Md. 620, 636–37 (2016) ("trial courts have broad discretion in how they fashion relief in custody matters"); *Gordon v.*

_____

[7] Because we find that the court acted within its statutory authorization regarding transportation costs generally, we do not consider whether the juvenile court could have issued the June 13 order under color of common law *parens patriae* authority, as proposed by Mother.

15

*Gordon*, 174 Md. App. 583, 638 (2007). It is true that the Department is not a party to a custody proceeding in its role providing services in CINA matters. However, absent legislative intent to the contrary, we read CJP § 3-802(c)(1)'s grant of jurisdiction to juvenile courts over custody of CINAs to include the same degree of discretion in issuing orders that the court finds to be in the best interest of the child.

Thus, where the circuit court finds that the best interests of the child require a local department to take certain action, the court has authority to issue an order to effectuate that action. The Department argues that ordering a local department to expend funds or take specific measures is inherently outside the boundaries of the court's authority. We see no support for such a bright-line rule in Subtitle 8, nor is it necessary to impose one insofar as we are empowered to do so. The circuit court's order that a child in need of assistance be committed to a local department—crucially, on terms that the court considers appropriate—is discretionary. *See In re Yve S.*, 373 Md. 551, 574 (2003).

We are sensitive to the policy considerations that the Department invokes in support of its argument. The Department's need for broad discretion to protect child welfare, and need to control its own budget, are compelling policy interests. However, we approach statutory grants of authority as we would any other question of statutory interpretation. In this regard we consider the legislature's policy goals in interpreting the plain text of its enacted statutes. *See Johnson v. State*, 467 Md. 362, 372 (2020) ("The plain language 'must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or *policy of the Legislature* in enacting the statute.'" (quoting *State v. Johnson*, 415 Md. 413, 421, 2 A.3d 368 (2010) (emphasis added))).

16

As K.P. notes, the legislature expressed its policy objectives for the CINA statutory scheme: "the opening section of the CINA subtitle establishes that the juvenile court 'may direct the local department to provide services to a child, the child's family, or the child's caregiver' and further that the court 'shall exercise [this] authority . . . to protect and advance a child's best interests.'" *See* CJP § 3-802(c)(1), (2) (West 2023). There is nothing in the text of the statutory scheme suggesting that the legislature saw protecting local departments from judicial intrusion as a primary policy goal. On the contrary, Subtitle 8 firmly places final authority to direct permanency planning in the hands of the juvenile court. CJP § 3-816.1 and § 3-823 place juvenile courts in a supervisory role over local departments in establishing and reviewing permanency plans.

The Department stresses that courts are directed to consider whether funds are available in its determination of whether a local department took reasonable efforts towards reunification. *See In re Shirley B.*, 419 Md. at 26–27. While that is an accurate statement of the law, it is an issue of the merits upon review of a juvenile court's finding that a local department failed to make reasonable efforts. Further, the Department's budgetary concerns would, perhaps, be an appropriate consideration in an abuse of discretion review but that issue is not before us today. The sole issue the Department raised on appeal is whether a juvenile court is prohibited from directing the Department to take specific measures or expend specific funds as a matter of law. The Department did not challenge a factual finding that it failed to put forth reasonable efforts to facilitate the permanency plan, nor does it specifically argue that the circuit court abused its discretion apart from exceeding its statutory authority.

17

To the extent that we need to consider whether the circuit court abused its discretion, though, we do not conclude that the juvenile court abused its discretion in ordering the Department pay costs incidental to Mother's visitation. A court abuses its discretion where it exercises discretion in a "manifestly unreasonable" manner, "or exercised [discretion] on untenable grounds, or for untenable reasons." *Jenkins v. City of College Park*, 379 Md. 142, 165 (2003) (emphasis omitted). An abuse of discretion occurs when the court's decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *McLennan v. State*, 418 Md. 335, 353–54 (2011) (quotation marks and citations omitted).

As discussed above, the juvenile court had discretion to issue orders facilitating the reunification plan that are in the minor children's best interest. Whether it was in the children's best interest for the Department to pay for Mother's visitation was not at issue at the June 9, 2023 review hearing. What was discussed was interpretation of the juvenile court's prior order. The juvenile court had already ordered on February 22, 2023 that "the Department shall provide [Mother] monthly in-person visits in North Carolina." The parties disputed whether the Department and Mother had agreed that the Department would pay for only two visits to North Carolina, or whether the Department's agreement to pay was open-ended. The court made no finding as to what the parties agreed but ruled that "there was nothing in [the February 22] order that said the Department only paid for two visits," and that any agreement to limit the Department's obligation to two visits, if such agreement existed, was "inconsistent with [the court's] order." In any case, the court made

18

clear that determining the existence of an agreement between the parties to pay for more than two visits was irrelevant to determining the meaning of the February 22 order.[8]

As the Department had already assented without objection to providing Mother monthly visitation out of its budget at the February hearing, the court merely reiterated that order, and specified the manner of transportation and accommodation, on June 9. We perceive nothing manifestly unreasonable or untenable in the order to pay Mother's transportation expenses. It was not "well removed from any center mark" that we might imagine for the juvenile court to hold that the Department's obligation to "provide" out-of-state visitation, as specified in the February 22 order, included providing travel and a hotel room. *McLennan*, 418 Md. at 353–54.

However, nothing in the facts presented to the juvenile court at the June 9 review hearing suggested that it was in the minor children's best interest that Mother's visitation had to be accomplished specifically by train, or that Mother must stay in a hotel while visiting the minor children in North Carolina. As the Department mentioned at oral argument, the price of Amtrak tickets might rise sharply, making it more practicable to provide transportation by car or plane, or a hotel room might be less suitable than a motel or staying with a relative. We observe that the Department paid for train tickets and a hotel room to facilitate two of Mother's visits to North Carolina prior to the June 9 hearing.

---

[8] The Department appears to suggest that it is problematic the court took no testimony and received no evidence as to the agreement between the parties before issuing its ruling at the June 9 hearing. Even if the court were required to hold an evidentiary hearing as to the content of the parties' agreement, here it merely clarified the scope of its own prior order without approaching any questions of fact regarding what the parties agreed to.

19

Presumably, at the June 9 hearing the court specified "Amtrak" and "hotel" simply because the Department had made those accommodations in the past. But, significantly, for the juvenile court to have acted within its discretion in this instance, it would have had to establish a nexus between the best interests of the minor children and requiring the Department pay for Amtrak tickets and a hotel room, specifically. Nothing in the record suggests that those specific accommodations were necessary to serve the minor children's best interests.

Thus, we conclude that while the juvenile court acted within its discretion in ordering the Department to facilitate Mother's visitation, it abused its discretion by imposing specific requirements for how the visitation was to occur. We therefore affirm the June 13 order to the extent that it directed the Department to pay for Mother's travel expenses for monthly in-person visitation in North Carolina and vacate the order to the extent that it specified that the visitation had to be accomplished by travel via Amtrak and hotel accommodation.

**THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED IN PART AND VACATED IN PART. APPELLANT TO PAY THE COSTS.**

20